# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| Roger A. Herndon, on behalf of himself and all others similarly situated,<br><br>                   Plaintiff,<br><br>         vs.<br><br>Huntington Ingalls Industries, Inc., the HII Administrative Committee, and John/Jane Does 1–5,<br><br>               Defendants. | Civil Action No.: 4:19-cv-00052-HCM-DEM<br><br><br><br><br><br><br><br><br><br>CLASS ACTION |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION FOR CLASS CERTIFICATION</u>

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

III.    DESCRIPTION OF THE PROPOSED CLASS ...................................................4

IV.     ARGUMENT .....................................................................................................4

      A.      Legal Standards for Class Certification ....................................................4

      B.      The Requirements of Rule 23(a) Are Satisfied ..........................................5

            1.      The Members of the Proposed Class Are So Numerous that Joinder
                 is Impracticable ...........................................................................6

            2.      Questions of Law and Fact Are Common to the Proposed Class ...............6

            3.      The Class Representative's Claims Are Typical of Those of the
                 Proposed Class ..........................................................................11

            4.      The Class Representative Will Fairly and Adequately Protect the
                 Interests of the Proposed Class and Should Be Appointed Class
                 Representative ...........................................................................12

      C.      The Proposed Class Meets the Requirements of Rule 23(b). ...............................14

            1.      The Class Should Be Certified Under Rule 23(b)(1)...............................14

            2.      In the Alternative, the Class May Be Certified under Rule 23(b)(2).........17

      D.      The Implied Requirements of Rule 23 Are Satisfied..............................................21

      E.      Herndon's Counsel Should Be Appointed Class Counsel Under Rule 23(g)........22

V.      CONCLUSION...............................................................................................23

TABLE OF AUTHORITIES

**<u>Cases</u>**

*Alday v. Raytheon Co.*,
   619 F. Supp. 2d 726 (D. Ariz. 2008) ................................................................. 15, 17

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ........................................................................... 18, 19

*Am. Sales Co., LLC v. Pfizer, Inc.*,
   No. 2:14cv361, 2017 WL 3669604 (E.D. Va. July 28, 2017) .................................... 6

*Amara v. Cigna Corp.*,
   775 F.3d 510 (2d Cir. 2014)................................................................................... 20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................... 4, 12, 13, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013)............................................................................................. 5

*Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*,
   270 F.R.D. 488 (N.D. Cal. 2010)........................................................................... 17

*Barton v. Constellium Rolled Prod.-Ravenswood, LLC*,
   No. 2:13-CV-03127, 2014 WL 1660388 (S.D.W. Va. Apr. 25, 2014)........................ 12, 13, 16

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
   338 F.3d 755 (7th Cir.2003) ............................................................................... 21

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   No. 3:11-CV-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014) ............................ 17

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ........................................................................ 17, 18, 19

*Berry v. Wells Fargo & Co.*,
   No. CV 3:17-00304-JFA, 2018 WL 9989754 (D.S.C. Oct. 9, 2018) .......................... 11, 13, 15

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ............................................................................. 11

*Brown v. Nucor Corp.*,
   785 F.3d 895 (4th Cir. 2015) ............................................................................... 5

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir.2009) ............................................................................... 6

*Caufield v. Colgate-Palmolive Co.*,
  No. 16CIV4170LGSKNF, 2017 WL 3206339 (S.D.N.Y. July 27, 2017) .......................... 15, 16

*City of Ann Arbor Employers' Ret. Sys. v. Sonoco Prods. Co.*,
  270 F.R.D. 247 (D.S.C. 2010) ................................................................................. 5, 6

*Clark v. Duke Univ.*,
  No. 1:16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) .......................................... 17

*Dameron v. Sinai Hosp. of Balt., Inc.*,
  595 F. Supp. 1404 (D. Md. 1984) .................................................................................. 6

*Des Roches v. Cal. Physicians' Serv.*,
  320 F.R.D. 486 (N.D. Cal. 2017) ................................................................................. 20

*DiFelice v. U.S. Airways, Inc.*,
  235 F.R.D. 70 (E.D. Va. 2006) ..................................................................... 10, 11, 14

*Dooley v. Am. Airlines, Inc.*,
  1993 WL 460849 (N.D. Ill. Nov. 4, 1993) ........................................................................ 2

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ..................................................................................... 21

*Forbush v. J.C. Penney Co.*,
  994 F.2d 1101 (5th Cir. 1993) .................................................................................... 16

*George v. Duke Energy Ret. Cash Balance Plan*,
  259 F.R.D. 225 (D.S.C. 2009) .................................................................... 6, 7, 12, 14

*Hammond v. Powell*,
  462 F.2d 1053 (4th Cir.1972) ..................................................................................... 21

*In re A.H. Robins Co., Inc.*,
  880 F.2d 709 (4th Cir. 1989) ................................................................................... 4, 5

*In re Kirschner Med. Corp. Sec. Litig.*,
  139 F.R.D. 74 (D. Md. 1991) ..................................................................................... 11

*Johnson v. Meriter Health Servs. Employee Ret. Plan*,
  702 F.3d 364 (7th Cir. 2012) ..................................................................................... 19

*Kohl v. Ass'n of Trial Lawyers of Am.*,
  183 F.R.D. 475 (D. Md. 1998) ...................................................................... 12, 16, 18

*LaFlamme v. Carpenters Local #370 Pension Plan*,
  212 F.R.D. 448 (N.D.N.Y. 2003) ................................................................................. 20

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*,
  268 F.R.D. 670 (W.D. Wash. 2010) ......................................................................... 17

*Meidl v. Aetna, Inc.*,
  No. 15-cv-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017)................................. 19, 20

*Miles v. Principal Life Ins. Co.*,
  720 F.3d 472 (2d Cir. 2013).................................................................................... 20

*Morrissey v. Curran*,
  650 F.2d 1267 (2d Cir. 1981).................................................................................. 21

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*,
  798 F.3d 125 (2d Cir. 2015).................................................................................... 21

*Osberg v. Foot Locker, Inc.*,
  862 F.3d 198 (2d Cir. 2017).................................................................................... 20

*Pender v. Bank of Am. Corp.*,
  269 F.R.D. 589 (W.D.N.C. 2010) .............................................................. 7, 10, 13, 16, 18, 21

*Piotrowski v. Wells Fargo Bank, NA*,
  No. CIV.A. DKC 11-3758, 2015 WL 4602591 (D. Md. July 29, 2015) ........................... 21, 22

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*,
  No. 3:12-CV-00596-MOC, 2015 WL 1346125 (W.D.N.C. Mar. 24, 2015) ........................... 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010)................................................................................................ 5

*Simpson v. Specialty Retail Concepts*,
  149 F.R.D. 94 (M.D.N.C. 1993) ............................................................................... 11

*Sims v. BB&T Corp.*,
  No. 1:15-CV-732, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ............................... 6, 10, 12

*Stephens v. U.S. Airways Group*,
  644 F.3d 437 (D.C. Cir. 2011)................................................................................... 2

*Tatum v. R.J. Reynolds Tobacco Co.*,
  254 F.R.D. 59 (M.D.N.C. 2008) ............................................................................... 14

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ................................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................................ 7

*West v. Cont'l Auto., Inc.,*
   No. 3:16-CV-502-FDW-DSC, 2017 WL 2470633 (W.D.N.C. June 7, 2017).................. 12, 16

*Zimmerman v. Bell,*
   800 F.2d 386 (4th Cir.1986) ................................................................................ 14

## Statutes

26 U.S.C. § 401(a)(25)................................................................................................ 15

29 U.S.C. § 1002(27)................................................................................................ 3, 4

29 U.S.C. § 1055....................................................................................................... 4

29 U.S.C. § 1055(d) ............................................................................................... 1, 2

## Regulations

26 C.F.R. § 1.401(a)-11(b)(2) ................................................................................. 3, 8

26 C.F.R. § 1.401(a)-20 ......................................................................................... 1, 2

## Rules

Fed. R. Civ. P. 23 ......................................................................................... 1, 4, 5, 21

Fed. R. Civ. P. 23(a) ..................................................................................... 4, 5, 14

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 6

Fed. R. Civ. P. 23(a)(2) ................................................................................. 6, 10

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ................................................................................. 12, 13

Fed. R. Civ. P. 23(b) ...................................................................................... 4, 14

Fed. R. Civ. P. 23(b)(1) ................................................................................ 14, 23

Fed. R. Civ. P. 23(b)(1)(A) ....................................................................... 14, 15, 16, 17

Fed. R. Civ. P. 23(b)(1)(B) ......................................................................... 14, 16, 17

Fed. R. Civ. P. 23(b)(2)......................................................... 14, 17, 18, 19, 20, 21, 23

Fed. R. Civ. P. 23(g) ......................................................................................... 22

Fed. R. Civ. P. 23(g)(1)...................................................................................... 22

**<u>Other Authorities</u>**

Manual for Complex Litigation § 21.222 (4th ed. 2004)............................................................ 21

Rev. Rul. 81-12, 1981-1 C.B. 228 (1981)..................................................................................... 15

Plaintiff Roger Herndon ("Herndon") respectfully submits this memorandum of law in support of his Motion for Class Certification.  Plaintiff requests entry of an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure (1) certifying this action as a class action; (2) appointing himself as Class Representative; and (3) appointing Bailey & Glasser LLP and Izard, Kindall & Raabe, LLP as Class Counsel.

## I.    INTRODUCTION

Plaintiff has a straightforward case:  Defendants pay retirees who select joint and survivor annuities less than the actuarial equivalent of a single-life annuity in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1055(d).  Specifically, Plaintiff alleges that Defendants' use of an almost 50-year old mortality table in the calculation of its joint and survivor annuities for participants in the "Legacy" part of the Huntington Ingalls Industries, Inc. Newport News Operations Pension Plan for Employees Covered by United Steelworkers Local 8888 Collective Bargaining Agreement (the "Plan") results in benefit payments that are substantially lower than the actuarial equivalent of a single life annuity (an "SLA").

These claims are well-suited to a class action on facts and law. On the facts, Defendants use the *same* outdated mortality table and the *same* interest rate to calculate the *same* types of benefits for all members of the class that Plaintiff seeks to certify.  If those actuarial assumptions are unreasonable, the terms of the Plan must be modified, and the past and future benefit payments of *all* class members must be adjusted to correct the shortfall.    On the law, the fundamental common legal question is whether Defendants' use of an antiquated mortality table to calculate class members' retirement benefits caused class members to receive benefits lower than the "actuarially equivalent" of an SLA in violation of federal pension law, including 29 U.S.C. § 1055(d) and 26 C.F.R. § 1.401(a)-20 Q&A 16.

## II.     FACTUAL BACKGROUND

The Plan is an "employee pension benefit plan" and a "defined benefit plan" under ERISA. The portion of the Plan relevant to this case is the "Legacy" sub-plan that covers eligible employees hired before June 7, 2004.  Plan Document, attached to the Declaration of Mark P. Kindall ("Kindall Decl.") as Exh. B, at 1-2.  Participants in the Legacy Plan accrue a retirement benefit in the form of a flat dollar amount for working for the Company during a specified period.  *Id.,* § 4.01. The dollar amount has ranged from $14.00 between 1969 and 1984 to $45.00 for years after 2011. *Id.*  A participant's retirement benefit is the sum of each specified dollar amount earned, starting at the Normal Retirement Date ("NRD," or age 65), adjusted depending on the retiree's age when the retiree begins receiving benefits.  *Id.,* § 2.01.[1]  The standard form of benefit is an SLA for unmarried participants and a 50 % joint and survivor annuity ("JSA") for married participants.  *Id.,* § 5.01. The 50% JSA must be the actuarial equivalent of the SLA.  *Id.,* § 5.01(b). Participants can also choose 75% and 100% JSAs.  *Id.,* § 5.03.  A participant who selects any one of the JSAs can choose an option that allows his or her benefit to revert to the SLA in the event that the Participant's spouse pre-deceases him or her.  *Id.,* § 5.01(f).[2]  Plaintiff Roger Herndon, a participant in the Plan, has received a 50% JSA since he retired in August 2013. *Id.*, ¶¶ 1, 13.

ERISA requires that the JSAs must be at least the "actuarial equivalent" of the SLA.  29 U.S.C. § 1055(d).  The term "actuarially equivalent" means that the two benefit forms have an ***equal present value***.  *Stephens v. U.S. Airways Group*, 644 F.3d 437, 440 (D.C. Cir. 2011); *Dooley v. Am. Airlines, Inc.*, 1993 WL 460849, at *11 (N.D. Ill. Nov. 4, 1993); *see also* 26 C.F.R.

---

[1] Participants who were worked for the Company before 1969 also receive a "Past Service Benefit." *Id.,* § 3.01.

[2] The Plan also provides other forms of benefit options, such as a lump sum option and a "Ten Year Certain and Continuous Annuity." *Id.,* § 5.01(g) & (i).  Participants who selected these other benefit options are not part of the proposed class.

§ 1.401(a)-20 Q & A 16 (a qualified JSA "must be ***as least as valuable*** as any other optional form of benefit under the plan at the same time").

The "present value" of a benefit obligation is the current value of the benefit stream, "adjusted to reflect anticipated events." ERISA § 3(27), 29 U.S.C. § 1002(27). Converting an SLA into an actuarially equivalent JSA requires a comparison of the present value of the ***aggregate*** future benefits the participant (and, if applicable, the beneficiary) is expected to receive under each form of benefit. The two critical actuarial assumptions in a present value calculation are the interest rate and the mortality table. The interest rate, sometimes called the "discount rate," discounts the value of future payments to reflect the time value of money. The mortality table determines the expected duration of the future payment stream by predicting how many people at a given age will die before attaining the next higher age.[3] The combination of the interest rate and mortality table establish a "conversion factor" used to determine whether a non-SLA benefit form is actuarially equivalent to the SLA. To properly "reflect anticipated events" as required by ERISA Section 3(27), these actuarial assumptions must be reasonable. 26 C.F.R. § 1.401(a)-11(b)(2) (requiring use of reasonable actuarial assumptions).

The Legacy Part uses the 1971 GAM mortality table and a 6% interest rate to calculate all of the JSA options. Plan Doc., § A.02. Plaintiff alleges that the 1971 GAM table does not "reflect anticipated events" because it does not reflect the substantial increases in life expectancies since it

---

[3] The Society of Actuaries, an independent actuarial group, publishes the mortality tables that are the most widely-used by defined benefit plans when doing these conversions. New mortality tables were published in 1971 (the "1971 GAM"), 1976, 1983, 1994, 2000, 2014 and 2019 to account for changes to a population's mortality experience. Declaration of Mitchell I. Serota ("Serota Decl."), at 9-12, attached to the Kindall Declaration as Exhibit C. Mortality rates are often "projected" to future years to account for expected improvements in mortality that have occurred since the latest table was published. *Id.* at 9. For example, actuaries commonly project the RP-2014 mortality table using a mortality improvement scale to account for improved mortality rates since 2014. *Id.* at 21.

was published.  Compl., ¶ 51. As a result, participants and beneficiaries who choose a Non-SLA

Annuity receive lower benefit payments every month compared to what they would receive if the

Plan used updated mortality assumptions. *Id.,* ¶ 6. Accordingly, the Non-SLA Annuities are not

actuarially equivalent to the SLA in violation of ERISA § 205, 29 U.S.C. 1055.

## III.    DESCRIPTION OF THE PROPOSED CLASS

Plaintiff proposes to certify the following Class:

> All participants or beneficiaries of the "Legacy" part of the Huntington
> Ingalls Industries, Inc. Newport News Operations Pension Plan for
> Employees Covered by United Steelworkers Local 8888 Collective
> Bargaining Agreement, who began receiving pension benefits on or after
> May 20, 2013, in the form of a joint and survivor annuity.  Excluded from
> the Class are Defendants and any individuals who are subsequently
> determined to be fiduciaries of the Plans.

As defined, the Class includes Plan Participants and beneficiaries who began receiving benefits in

the form of ***any*** type of JSA – whether 50%, 75% or 100%; with or without a "pop-up" option;

and whether by virtue of choosing that option, or receiving a JSA as a result of the Plan's

provisions relating to qualified pre-retirement survivor annuities ("QPSAs").  Plaintiff Herndon is

receiving benefits under the Plan's default option for married participants – a 50% JSA – but he is

harmed in the same way as all other members of the proposed Class by Defendants' use of the

same outdated mortality table to calculate his benefits.

## IV.    ARGUMENT

### A.    Legal Standards for Class Certification

To certify a class action under Rule 23, plaintiffs must first satisfy the four requirements

of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and then demonstrate that the

case is "maintainable" under one of the three prongs of Rule 23(b).  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 614 (1997); *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 727-28 (4th Cir.

1989).  Courts also read into Rule 23 two implied requirements for class certification: that there be "an identifiable class and that the plaintiff or plaintiffs be a member of such class."  *Id.* at 728.

Courts require plaintiffs to establish by a preponderance of the evidence that the action complies with each part of Rule 23.  *Brown v. Nucor Corp.*, 785 F.3d 895, 931 (4th Cir. 2015).  In a class-certification motion, "[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

"By its terms, [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Therefore, "Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met."  *Id.* at 406.

As discussed below, this case meets all of Rule 23's requirements for class certification. Certification of the proposed Class would promote efficient use of the Court to resolve common issues involving the actuarial equivalence of benefits being received by over 1400 Class members.

**B.      The Requirements of Rule 23(a) Are Satisfied**

Rule 23(a) provides that a case can be certified as a class action when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  These prerequisites are often referred to as "numerosity, typicality, commonality, and adequacy of representation."  *City of Ann Arbor Employers' Ret. Sys. v. Sonoco*

*Prods. Co.*, 270 F.R.D. 247, 250 (D.S.C. 2010).  As described below, Plaintiff satisfies each of these elements.

### 1.      The Members of the Proposed Class Are So Numerous that Joinder is Impracticable

Rule 23(a)(1) requires a finding that the putative class is so numerous that joinder of all members is "impracticable."  *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 231 (D.S.C. 2009).  While no specific number of class members is necessary, "[g]enerally, classes consisting of forty or more members are considered sufficiently large to satisfy the impracticability requirement."  *Am. Sales Co., LLC v. Pfizer, Inc.*, No. 2:14cv361, 2017 WL 3669604, at *6 (E.D. Va. July 28, 2017).  A class "consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical."  *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984).

The Class satisfies the numerosity requirement.  Over 1400 individuals began receiving Plan benefits in the form of a JSA during the class period.  Serota Decl., at 30.  Because joinder of each of these individuals would be impracticable, the numerosity requirement is satisfied.  *City of Ann Arbor*, 270 F.R.D. at 251.

### 2.      Questions of Law and Fact Are Common to the Proposed Class

Rule 23(a)(2) "requires that there are questions of law or fact common to the class." *George*, 259 F.R.D. at 231.  The resolution of these common questions must "affect all or a substantial number of the class members."  *Brown v. Nucor Corp.*, 576 F.3d at 153 (internal quotation marks and citations omitted).  "Commonality does not require that all, or even most issues be common and even a single common question will do."  *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2017 WL 3730552, at *2 (M.D.N.C. Aug. 28, 2017) (internal quotations omitted). Commonality is satisfied if the determination of even ***one*** question "will resolve ***an*** issue that is

central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis added).

The central issue for all members of the Class is the same, regardless of which JSA they selected and regardless of their age (or their beneficiary's age) when they began receiving benefits: Whether the value of benefits they are receiving (and have been receiving) is less than the "actuarial equivalent" of the value of single-life annuity they could have selected when they began to receive benefits, in violation of ERISA.   Determining whether it was reasonable to calculate actuarial equivalence using the 1971 GAM mortality table in combination with a 6% discount rate will resolve *the* central issue in the case for the entire Class.   That alone is sufficient to meet the commonality test the Supreme Court articulated in *Wal-Mart*.   *See, e.g., Pender v. Bank of Am. Corp.,* 269 F.R.D. 589, 596 (W.D.N.C. 2010) (commonality requirement met where common issues included whether participants' benefits were "correctly calculated" and whether participants were "forfeiting a portion of their accrued benefits by" selecting a particular form of benefit); *George*, 259 F.R.D. at 236 (commonality requirement satisfied in suit challenging Duke Energy's methodology for calculating alternative form of pension benefit).

The *factual questions* that are common to the Class include the following:

*How does the Plan calculate the monthly benefit amounts for the JSAs?*   Throughout the Class Period, the benefits for any participant or beneficiary receiving any type of JSA were calculated in the same way:  by using the 1971 GAM mortality table and a 6% interest rate to convert the SLA they could have selected on the date they began receiving benefits into an "actuarially equivalent" JSA.   Plan Doc.,§ A.02.

*Were the actuarial assumptions used to calculate class member benefits reasonable?*   As discussed in the declaration of Mitchell I. Serota, Ph.D., President of Mitchell I. Serota and

Associates, an Enrolled Actuary (E.A.) under ERISA, a Fellow of the Society of Actuaries (F.A.) and a Member of the American Academy of Actuaries (M.A.A.A.), the 1971 GAM table was published in 1971 based on data from the 1960s, when retirees were not living as long on average as they do today. Serota Decl. at 23-24. The table has been superseded by several more up-to-date tables over the years. *Id.* at 10.

ERISA requires that plans determine actuarial equivalence using factors that are both "reasonable" and "***consistently applied***" when calculating benefits for participants and beneficiaries. *See, e.g.,* 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added). The particular circumstances of each plan participant are irrelevant. Thus, the Plan did, as required, apply the ***same*** actuarial factors to calculate the benefit payments of ***all*** members of the Class. Moreover, every member of the Class first began receiving benefits sometime after May of 2013 and, under the Plan, the earliest possible age at which they could receive their benefits was 55. Plan Doc., §§ 1.23, 1.24 and 2.02. If, as Plaintiff argues and as Dr. Serota testifies, it was not reasonable to use the 1971 GAM mortality table to calculate benefits for retirees in May of 2013, it necessarily follows that it was not reasonable to use the 1971 GAM table to calculate the retirement benefits of ***any*** member of the proposed Class.

*Whether Class Members would receive larger monthly benefit payments if the Plan used reasonable actuarial assumptions during the proposed Class Period.* As discussed in Dr. Serota's report, all members of the proposed Class would receive a larger monthly benefit if the Plan had calculated their benefits using reasonable, up-to-date mortality rate assumptions, even if Defendants had simultaneously used a lower interest rate in its calculations. Serota Decl., at 26. To make this determination, Dr. Serota calculated the difference between the monthly benefits all class members are actually receiving and the monthly benefits that they would be receiving if

Defendants had used the same mortality tables that they used each year to calculate lump-sum benefit payments (the "Applicable Mortality Table"), coupled with the interest rate assumptions Huntington Ingalls used to value its pension liabilities in audited financial statements as of December 31 of the preceding plan year.   *Id.* at 22.  Because Dr. Serota uses the same calculations for all class members and all class members would receive a larger benefit had Defendants not used outdated mortality assumptions, injury presents a common question.

*Calculation of Losses:*  Plaintiff's prayer for relief requests that the Court order Defendants to recalculate the amount of Class Members' monthly benefit payments, pay them the correct amount going forward, and compensate them for the amounts that they have been shortchanged to date.  The Court could simply order Defendants to perform the necessary calculations, or Plaintiff could perform the calculations at trial, using a methodology that was common to the Class that would involve a mechanical recalculation, substituting correct actuarial assumptions for the ones the Plan used in their original benefit calculations.  Serota Decl., at 29-31.

*Responsibility of Defendants:*  The Defendants' liability turns on the roles that they had with respect to the Plan.  This, too, presents common factual issues, because Defendant Huntington Ingalls is the sponsor of the Plan and the HII Administrative Committee is the administrator.  Plan Doc., at 2 and at § 10.01.

The *legal issues* that are common to the Class include:

- Whether ERISA and/or the Plan require actuarial equivalence for JSAs;

- Whether it is permissible to use unreasonable actuarial assumptions to calculate monthly benefits payable in the form of JSAs;

- Whether failure to provide JSAs that are actuarially equivalent to an SLA constitutes an impermissible forfeiture under ERISA Section 203;

- Whether Huntington Ingalls, as Plan Sponsor, is obligated to reform the Plan to ensure calculation of actuarially equivalent JSAs;

- Whether the HII Administrative Committee, as administrator of the Plan, breached its fiduciary duties by authorizing payment of benefits that were not actuarially equivalent to an SLA as required by ERISA and/or the Plan;

- Whether Class Members are entitled to have their future benefit payments increased; and

- Whether Class Members are entitled to be paid the shortfall in their pension benefit payments to date.

Proof on each issue will necessarily apply for the entirety of the Class. That Class members may have suffered different degrees of injury, or will receive different benefits from a finding of liability, does not defeat commonality. *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006). Courts routinely certify classes of ERISA plan participants even when it is necessary to perform calculations to determine the amount of monetary relief available to each participant or beneficiary. *See Sims*, 2017 WL 3730552, at *4; *see also Pender,* 269 F.R.D. at 596 (certifying class despite the "necessity for . . . somewhat complex individual calculation" in order to determine class members' pensions). Here, as discussed above, the Class Representative has retained an expert who has devised a model to calculate individual Class member damages using all the same, common inputs based on the Plan's own data, Huntington Ingalls' annual "best estimate" of the appropriate interest rate for valuation of its pension liabilities, and the Applicable Mortality Table. *See* Serota Decl. at 29-31.

In sum, the claims of all class members turn on the same legal and factual questions. If Defendants' actuarial assumptions were unreasonable and improper with respect to any class member, they were unreasonable and improper with respect to all class members. This is more than sufficient to satisfy the commonality requirement of Rule 23(a)(2).

### 3.   The Class Representative's Claims Are Typical of Those of the Proposed Class

Rule 23(a)(3) requires that claims or defenses of the named class representative be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is generally met if a plaintiff's claim "arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 99 (M.D.N.C. 1993); *see also DiFelice*, 235 F.R.D. at 78-79 ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (internal quotation marks omitted).

Typicality does not require that the claims be "identical" in all respects. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). Rather, typicality "is satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the named parties and the other members of the class." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 79 (D. Md. 1991). Generally, typicality is satisfied where, as here, "plaintiffs' claims arise out of the common course of conduct of one or more defendants." *Berry v. Wells Fargo & Co.,* No. CV 3:17-00304-JFA, 2018 WL 9989754, at *9 (D.S.C. Oct. 9, 2018).

Here, Plaintiff and all members of the Class are receiving JSAs under the Plan sponsored by Huntington Ingalls and administered by the HII Administrative Committee. Like all members of the Class, Plaintiff is receiving monthly benefits in the form of a JSA in an amount that was calculated using the same, flawed, actuarial assumptions – the 1971 GAM and a 6% interest rate. Moreover, Plaintiff would be receiving a larger monthly benefit today if his benefits had been calculated using actuarial assumptions that were reasonable on his Benefit Commencement Date, just like all other members of the Class. Serota Decl., at 26-31. All Class members would make

arguments centered around the appropriateness of the 1971 GAM mortality table to calculate their equivalent benefit, bring those claims under the same provisions of ERISA, and seek the same sort of remedies, regardless of which JSA they are receiving or when or at what age they retired.

Courts have held that typicality is satisfied in similar cases. *See, e.g., West v. Cont'l Auto., Inc.,* No. 3:16-CV-502-FDW-DSC, 2017 WL 2470633, at *2 (W.D.N.C. June 7, 2017) (typicality satisfied where plaintiffs and the class would make the "same factual allegations" and the "same legal claims that Defendants' conduct violates ERISA" and had the "same interest in proving Defendants' liability."); *Barton v. Constellium Rolled Prod.-Ravenswood, LLC,* No. 2:13-CV-03127, 2014 WL 1660388, at *3 (S.D.W. Va. Apr. 25, 2014) (typicality satisfied by plaintiffs who were "typical elderly, blue-collar retirees who allege that their retiree benefits are being improperly reduced or terminated, in violation of labor contracts and ERISA plan provisions."); *George,* 259 F.R.D. at 236 (typicality met where plaintiffs, like all members of the class, alleged a "loss arising from Duke's failure to have their lump sum distribution determined using a whipsaw calculation."); *Kohl v. Ass'n of Trial Lawyers of Am.,* 183 F.R.D. 475, 484 (D. Md. 1998) (typicality satisfied where plaintiff claimed "an underpayment of . . . pension benefits" resulting from a company-wide policy that allegedly violated ERISA).

### 4. The Class Representative Will Fairly and Adequately Protect the Interests of the Proposed Class and Should Be Appointed Class Representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," meaning that a plaintiff must have the same interests and suffer the same injury as the class. *See Amchem*, 521 U.S. at 625-626. The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent" as well as the "competency and conflicts of class counsel." *Id*. at 625, 626 n.20; *Sims*, 2017 WL 3730552, at *5. Adequacy is satisfied when "(1) the named plaintiff[s] [have] interests common with, and

not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation." *Pender,* 269 F.R.D. at 597; *see also Berry v. Wells Fargo,* 2018 WL 9989754, at *10 (same). Moreover, "[a] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Barton,* 2014 WL 1660388, at *4 (quoting *Amchem,* 521 U.S. at 625–26).

Mr. Herndon satisfies all of the requirements of Rule 23(a)(4). He is part of the Class, suffering the same injury – receiving a lower monthly benefit than he should be – and having the same interest as all Class Members. There is no conflict between Mr. Herndon and the members of the Class; his claims rise and fall on the same facts and legal theories as all other members of the Class.

Moreover, Mr. Herndon is familiar with the details of his own benefit option and generally familiar with how those benefits were supposed to be calculated. *See* Declaration of Roger A. Herndon ("Herndon Decl."), at ¶¶ 3-5, attached to the Kindall Declaration as Exhibit D. He has discussed his situation with class counsel, provided all of his documents concerning benefits, responded to discovery, and is prepared to testify at a deposition and at trial if necessary. *Id.* at ¶¶ 6-7. He has reviewed the Complaint filed in the case and have a non-expert's understanding of the theory of the case. *Id.* at ¶ 5. Moreover, he understands that he is seeking to represent all of the people who are receiving JSAs in the Legacy Part of the Plan who were injured just like he was, and fully intends to work hard to protect the interests of the Class as a whole and maximizing its recovery. *Id.* at ¶ 7.

Mr. Herndon has also retained qualified counsel to prosecute this case. Proposed Class Counsel prepared a detailed Complaint [ECF No. 1] and have opposed Defendants' motion to dismiss [ECF No. 28]. Proposed Class Counsel have extensive relevant experience and are well-

qualified to represent the Class.  Both Izard, Kindall & Raabe, LLP ("IKR") and Bailey & Glasser

LLP ("B&G") have served and are serving as class counsel in dozens of ERISA class actions

around the country, including seven other lawsuits that similarly challenge benefit calculations

that use outdated actuarial assumptions.  *See* Kindall Decl., ¶¶ 4-6 and Exh. A (IKR firm resume),

and the Declaration of Gregory Y. Porter at ¶¶ 5-13 and Exh. A-C (B&G firm resume and

biographies of attorneys).

      **C.**      **The Proposed Class Meets the Requirements of Rule 23(b).**

In addition to meeting Rule 23(a)'s criteria, a case must satisfy one of Rule 23(b)'s

requirements for a class to be certified.  As described below, this case meets the requirements of

Rules 23(b)(1) and 23(b)(2).

      **1.**      **The Class Should Be Certified Under Rule 23(b)(1)**

A class may be certified under Rule 23(b)(1)(A) if separate actions "would create a risk of

inconsistent or varying adjudications . . . that would establish incompatible standards of conduct"

for the defendant *or* under 23(b)(1)(B) if separate actions would create a risk that individual actions

would be "dispositive of the interests of other members not parties to the individual" suits or

"would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P.

23(b)(1)(A) & (B).  Subsection A of Rule 23(b) "attempts to avoid possible prejudice to the

defendants, while subsection B is concerned with prejudice to the putative class members.

*DiFelice,* 235 F.R.D. at 80; *accord, Tatum v. R.J. Reynolds Tobacco Co.,* 254 F.R.D. 59, 66

(M.D.N.C. 2008) (same)*; George,* 259 F.R.D. at 233 ("an 'action may be brought as a class action

under Rule 23(b)(1) if individual adjudication of the controversy would prejudice either the party

opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B).'") (quoting *Zimmerman*

*v. Bell,* 800 F.2d 386, 389 (4th Cir.1986). As described below, the Class may be certified under

both sub-parts of Rule 23(b)(1).

Rule 23(b)(1)(A) applies "in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614.  This rule applies to ERISA plans because plan administrators "'must treat all similarly situated participants in a consistent manner.'"  *Berry v. Wells Fargo,* 2018 WL 9989754, at *12 (quoting *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (collecting cases)); *accord, Caufield v. Colgate-Palmolive Co.,* No. 16CIV4170LGSKNF, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017) (noting that "[t]he language of subdivision (b)(1)(A), addressing the risk of 'inconsistent adjudications,' speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike") (internal quotations and citations omitted).

Retirement plans must calculate benefits in a uniform way; they cannot use one set of actuarial assumptions to calculate one participant's benefits and a different set for another participant who retires at the same time.  Indeed, the Internal Revenue Code specifically provides that "whenever the amount of any benefit is to be determined on the basis of actuarial assumptions, such assumptions are specified in the plan in a way which precludes employer discretion."  26 U.S.C. § 401(a)(25).[4]  Thus, Defendants were — and are — required to treat members of the class alike, which is why Plaintiff is specifically seeking that the Plan be reformed to provide that benefits be calculated in accordance with reasonable actuarial assumptions, rather than the assumptions that were in the Plan throughout the Class Period.

---

[4] Nothing in the Tax Code or ERISA precludes plan sponsors from amending their plans to update actuarial assumptions that have ceased to be realistic, as Plaintiff claims should have been done in this case.  Moreover, plan sponsors can, if they choose, adopt variable assumptions in their plan documents, so long as the variables are not within the control of the plan administrators.  Rev. Rul. 81-12, 1981-1 C.B. 228 (1981).  For example, the Revenue Ruling describes a plan using "an interest rate equal to 50% of the prime rate of a specified unrelated bank.  *Id.* at Example 2.

Courts have not hesitated to certify classes pursuant to Rule 23(b)(1)(A) in cases involving plan-wide policies affecting all participants in a defined benefit plan. Indeed, "ERISA cases in which plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A)." *West,* 2017 WL 2470633, at *3 (citing cases); *accord, Barton,* 2014 WL 1660388, at *5; *Kohl,* 183 F.R.D. at 485–86 (same). The *West* and *Barton* courts both cite *Pender,* where the court reasoned that granting relief to plaintiffs challenging benefit computation formulae for a defined benefit plan would require "decisions about the fundamental nature of the Plans" coupled with "a risk that putative class members would seek relief in other courts, leading to conflicting interpretations of the Plan and conflicting remedies." *Pender,* 269 F.R.D. at 598-99. As these cases demonstrate, the proposed class should be certified under Rule 23(b)(1)(A). In the absence of class certification, multiple participants in the Plan could challenge Defendants' benefits calculations, resulting in multiple, inconsistent determinations of whether the Plan's actuarial assumptions were reasonable and what assumptions should be used instead. This is the precise result that Rule 23(b)(1)(A) was designed to prevent.

Certification is also appropriate under Rule 23(b)(1)(B), because individual adjudications on the central issue – whether the Plan used outdated mortality assumptions during the class period to calculate ***all*** JSAs – would be dispositive of the interests of other plan participants. In *Caufield,* for example, the court certified a (b)(1)(B) class of plan participants challenging the way that an ERISA plan calculated a lump-sum benefit option, holding that "a determination of any one of the proposed class members' claims would have a strong, if not determinative, influence on the outcome of other class members' claims." *Caufield,* 2017 WL 3206339, at *6; *see also Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1103 (5th Cir. 1993) (reversing the denial of (b)(1)(B) certification for a class of ERISA plan participants challenging benefits calculation methodology);

-16-

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.,* 268 F.R.D. 670, 678 (W.D. Wash. 2010) (certifying (b)(1)(B) class and reasoning that if "the legality of the Plan's method of computing lump sum benefit distributions were resolved in separate actions by individual class members, those adjudications could be, as a practical matter, dispositive of the interests of those class members not parties to those actions"); *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program,* 270 F.R.D. 488, 496 (N.D. Cal. 2010) (certifying (b)(1)(B) class where resolution of plaintiff's claim "would be dispositive of other similarly situated plan participants because 'ERISA requires plan administrators to treat all similarly situated participants in a consistent manner'") (quoting *Alday,* 619 F. Supp. 2d at 736); *Clark v. Duke Univ.,* No. 1:16-CV-1044, 2018 WL 1801946, at *9 (M.D.N.C. Apr. 13, 2018) (certifying a 23(b)(1)(B) class in an ERISA action in part because "the claims concern the same actions in managing the Plan").

Accordingly, the class should be certified under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

### 2.    In the Alternative, the Class May Be Certified under Rule 23(b)(2)

Certification is also proper here because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). Certification under Rule 23(b)(2) is appropriate where, as here, "final injunctive relief is sought and will settle 'the legality of the behavior with respect to the class as a whole.'" *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.,* No. 3:11-CV-754, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (quoting *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 329 (4th Cir. 2006)) and Rule 23(b)(2) 1966 advisory committee's note).  As outlined above, all class members were subject to the ***same*** policy on calculating actuarial equivalence (*i.e.,* using 1971 GAM mortality assumptions coupled with a 6%

-17-

interest rate); all have been harmed in essentially the ***same*** way — their benefits are lower than they would have been if they had been calculated using reasonable actuarial assumptions; and final declaratory and injunctive relief will settle the question of whether Defendants' benefits calculations violated ERISA.

Courts have not hesitated to certify classes under Rule 23(b)(2) in cases that involve uniform benefit calculations for ERISA retirement plans. *See, e.g., Pender,* 269 F.R.D. at 599 (the plan calculated the benefits of all class members in the same way, and thus defendants ''acted or refused to act on grounds generally applicable to the class' and final injunctive or declaratory relief will be appropriate "with respect to the class as a whole'") (quoting Fed. R. Civ. P. 23(b)(2)); *accord, Kohl,* 183 F.R.D. at 486 (appropriate to certify (b)(2) class where "it cannot be gainsaid that Defendants have calculated lump sum payments, in every instance, without including the cost of living adjustment").

While Plaintiff seeks monetary relief for the benefits shortfall that has resulted, and will continue to result, from Defendants' violation of ERISA's actuarial equivalence requirements for JSAs, that relief is entirely consistent with certification of a (b)(2) class. As the Fourth Circuit has held, "federal courts long have permitted certification of mandatory Rule 23(b)(2) classes involving monetary relief so long as that relief is 'incidental' to injunctive or declaratory relief— meaning that damages must be in the nature of a 'group remedy,' flowing 'directly from liability to the class as a whole.'" *Berry v. Schulman*, 807 F.3d 600, 611 (4th Cir. 2015) (quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412 (5th Cir. 1998)).

The *Allison* decision relied upon by *Berry* provides additional guidance on what constitutes "incidental" damages:

> [T]he recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief.

> Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Allison,* 151 F.3d at 415; *accord, Johnson v. Meriter Health Servs. Employee Ret. Plan,* 702 F.3d 364, 372 (7th Cir. 2012) (certification of a (b)(2) class appropriate where "calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program"). The relief requested by the Class in this case fits squarely within the framework discussed by *Allison* and *Johnson* and approved by the Fourth Circuit in *Berry*.

Plaintiff seeks, first and foremost, a declaratory judgment that the Plan "fail[s] to properly calculate" alternative forms of benefits "that are actuarially equivalent to single-life annuities." Compl., ECF No. 1, at 22, ¶ B. Next, Plaintiff requests a mandatory injunction, requiring Defendants to bring the Plan into compliance with ERISA's actuarial equivalence requirements, and to correct and recalculate benefits that have already been paid and provide an accounting of all prior payments. *Id.* at 22, ¶¶ C, D, E, J. Plaintiff further requests that all future benefits payments to the Class be the actuarial equivalent of the single-life annuity they could have received on their benefit commencement date. *Id.* at 22, ¶ K. If the Court grants this requested declaratory and injunctive relief, payment of amounts improperly withheld to date, whether through surcharge or disgorgement (¶¶ F and G), a constructive trust (¶ H) or an equitable lien (¶ I), will be calculated in accordance with an objective standard, would not depend on intangible or subjective differences in Class Members' circumstances, and would not require additional hearings.

Courts have routinely held that a "reprocessing injunction" is "the appropriate type of relief" for classes certified under Rule 23(b)(2). *See Meidl v. Aetna, Inc.*, No. 15-cv-1319 (JCH),

2017 WL 1831916, at *22 (D. Conn. May 4, 2017) ("[I]n an ERISA case, where insurance administrators unlawfully deny benefits, the appropriate remedy is 'typically' to 'return the claim' to the insurance plan administrator 'for reconsideration.'") (quoting *Miles v. Principal Life Ins. Co.,* 720 F.3d 472, 490 (2d Cir. 2013). "[T]he Court can order Defendants to reprocess individual claims and determine if each class member is entitled to coverage or compensation." *Des Roches v. Cal. Physicians' Serv.,* 320 F.R.D. 486, 509 (N.D. Cal. 2017) (collecting and discussing cases); *see also LaFlamme v. Carpenters Local #370 Pension Plan,* 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003) (certifying Rule 23(b)(2) class seeking "recalculation of benefits" pursuant to correct interpretation of plan).

Damages that flow from this recalculation are "incidental" to the reprocessing injunction and are an allowable remedy to a Rule 23(b)(2) class. "[A] reprocessing order is not properly treated as monetary relief. Rather than seeking payment, a reprocessing claim simply seeks that claims be reprocessed via a lawful method, despite the fact that certain class members may receive no payment even after the reprocessing." *Meidl,* 2017 WL 1831916, at *21 (collecting cases).[5] Reprocessing damages can also be awarded as a surcharge. As one court noted:

> [W]here, as here, a plan participant brings suit against a plan fiduciary . . . for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with "surcharge" . . . constitutes equitable relief under § 502(a)(3). . . . And so we hold that to the extent [plaintiff] seeks redress for [defendant]'s past breaches of fiduciary duty or seeks to enjoin [defendant] from committing future breaches, the relief sought would count as "equitable relief" under § 502(a)(3).

---

[5] *See also Amara v. Cigna Corp.,* 775 F.3d 510, 523 (2d Cir. 2014) (affirming award of monetary relief, noting "[w]hen the plan is reformed according to the district court's order, monetary benefits flow as a necessary consequence of that injunction"); *Osberg v. Foot Locker, Inc.,* 862 F.3d 198, 215 (2d Cir. 2017)(reaffirming court's power to requiring reprocessing to conform to reformed ERISA plan), *cert. denied,* 138 S. Ct. 981 (2018); *LaFlamme,* 212 F.R.D. at 456 (noting damages that arise from recalculation of benefits "can only be said to be incidental to the declaration that defendants' . . . plan is in violation of the law").

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (internal

citations and quotations omitted). "For a trustee's account to be surcharged, he need not be guilty

of fraud or intentional wrongdoing, but simply have failed to discharge a duty required by law."

*Morrissey v. Curran,* 650 F.2d 1267, 1282 (2d Cir. 1981).

Courts have frequently noted that "Rule 23(b)(2) can still be satisfied even where a

declaratory judgment is 'merely a prelude to a request for [monetary relief].'" *Pender,* 269 F.R.D.

at 599 (quoting *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763 (7th

Cir.2003)); *accord, Rehberg v. Flowers Baking Co. of Jamestown, LLC,* No. 3:12-CV-00596-

MOC, 2015 WL 1346125, at *13 (W.D.N.C. Mar. 24, 2015).  Certification is therefore even more

appropriate in cases like this one involving reprocessing injunctions, where declaratory and

injunctive relief are central to the relief sought by the class.

### D.        The Implied Requirements of Rule 23 Are Satisfied

The Fourth Circuit has held that Rule 23 implicitly requires that a class must be defined in

such a way that members are "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358

(4th Cir. 2014) (quoting *Hammond v. Powell,* 462 F.2d 1053, 1055 (4th Cir.1972)).   While

plaintiffs are not required to "identify every class member at the time of certification," the class

must be defined by "objective criteria" so that the process of identifying class members does not

require "extensive and individualized fact-finding or mini-trials . . . ." *EQT Prod.,* 764 F.3d at 358

(internal citations and quotations omitted); *see also Piotrowski v. Wells Fargo Bank, NA,* No.

CIV.A. DKC 11-3758, 2015 WL 4602591, at *3 (D. Md. July 29, 2015).

The proposed class satisfies Rule 23's implied requirement that it be precisely defined,

objective, and readily ascertainable.  *See* Manual for Complex Litigation § 21.222 (4th ed. 2004).

The Plan's recordkeeper maintains electronic records of Plan participants, including information

on the types of benefits that they are receiving and the basis for those benefit calculations; this

information was used by Dr. Serota in his damages calculations.  Thus, it will be a straightforward matter to identify class members from Plan records.

### E.     Herndon's Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  "In appointing class counsel," courts "must consider:

> (i)     the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)   counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class; . . . .

*Id.*  Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class . . . ."  *Id.*

Plaintiff respectfully submits that the law firms of Bailey & Glasser LLP and Izard, Kindall & Raabe LLP meet the criteria to be appointed as Class Counsel under Rule 23(g).  They have identified the claims alleged in the Complaint to protect the members of the Class and have diligently prosecuted these claims throughout this case.  Both firms, individually and together, have ample class action and ERISA experience and have demonstrated their commitment to representing the Class.  *See* Kindall Decl., ¶¶ 1, 4, 5 & 6 and Exh. A; Porter Decl., ¶¶ 4-13 and Exhs. A-C.  Plaintiff requests that his chosen counsel be appointed as Class Counsel under Rule 23(g).

## V.      CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court certify the proposed Class pursuant to Rule 23(b)(1) or Rule 23(b)(2), appoint him to serve as class representative, and appoint Izard, Kindall & Raabe, LLP and Bailey & Glasser LLP as Co-Lead Counsel for the Class.

Dated: December 13, 2019                            Respectfully submitted,


/s/ Gregory Y. Porter
**BAILEY & GLASSER LLP**
Gregory Y. Porter (VSB # 40408)
1055 Thomas Jefferson Street, NW, Suite 540 Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: gporter@baileyglasser.com


Mark G. Boyko (to be admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
8012 Bonhomme Avenue, Suite 300
Clayton, MO 63105
Tel: (202) 463-2101
Fax:(202) 463-2103
mboyko@baileyglasser.com


**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice*)
Mark P. Kindall (*pro hac vice*)
Douglas P. Needham (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email:  rizard@ikrlaw.com
Email:  mkindall@ikrlaw.com
Email:  dneedham@ikrlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 13, 2019, I caused a copy of the foregoing to be electronically filed through this Court's CM/ECF system.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


*/s/ Gregory Y. Porter*
Gregory Y. Porter