**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| Roger A. Herndon, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Huntington Ingalls Industries, Inc., the HII Administrative Committee, and John/Jane Does 1–5,<br><br>Defendants. | Civil Action No.: 4:19-cv-00052-HCM-DEM<br><br><br><br><br><br><br><br>CLASS ACTION |

**PLAINTIFF HERNDON'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF THOMAS S. TERRY**

**I.     INTRODUCTION**

This case is about the actuarial assumptions used by Huntington Ingalls Industries, Inc. ("Huntington") to calculate Plaintiff's retirement benefits and the retirement benefits of similarly situated participants in the Huntington Ingalls Industries, Inc. Newport News Operations Pension Plan for Employees Covered by the United Steelworkers Local 8888 Collective Bargaining Agreement (the "Plan"). When participants such as Herndon take an optional form of benefit under the Plan—a joint and survivor annuity ("JSA") in Herndon's case—the Employee Retirement Income Security Act ("ERISA") requires the present value of the optional form of benefit to be "actuarially equivalent" to the present value of a single life annuity ("SLA"). 29 U.S.C. §§ 1002(27), 1055(d)(1)(B), 1055(d)(2)(A)(ii). Huntington calculates actuarial equivalence using a "conversion factor" that is the product of two actuarial factors: (1) an interest rate assumption; and (2) mortality assumptions. Declaration of Thomas S. Terry ("Terry Dec.") ¶¶ 15, 27, D.I. 54-2. Herndon complains that Huntington used unreasonable and outdated mortality assumptions, which unlawfully reduced his pension benefit.

Defendants proffer the expert testimony of Thomas S. Terry in support of their motion for summary judgment. (D.I. 54-2.) But summary judgment must be supported by admissible evidence. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); Fed R. Civ. P. 56(c)(2) (party opposing summary judgment may object to facts that are not supported by admissible evidence). Further, the rules of evidence require the Court to ensure that expert testimony is relevant and reliable. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). "The proponent of the [expert] testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). Substantial portions of Terry's expert testimony are inadmissible because they are not relevant.

Specifically, Terry repeatedly states that his opinion that the conversion factor used by Huntington to convert Herndon's benefit is reasonable based solely on present-day assumptions rather than assumptions as of the date Herndon retired. Under ERISA and the Plan, however, Herndon's benefits should have been correctly calculated when he retired in 2013, not recalculated based on actuarial data that did not even exist seven years ago.

Therefore, the Court, pursuant to its gatekeeping function, should exclude Terry's expert report and testimony to the extent it addresses the reasonableness of the conversion factor.

## II. FACTS

Under the Plan, a participant's Pension Commencement Date is the applicable date on which a participant's pension is to commence under Sections 2.01-2.04 of the Plan. Plan § 1.26, D.I. 54-5, PageID# 1182. Herndon retired around September 1, 2013 and was eligible to receive a normal retirement benefit. Plan § 2.01. Because Herndon was married at the time of retirement and he and his spouse had not elected an alternative form of benefit, he received a 50% JSA by default. Defendants' Statement of Undisputed Material Facts ("Defs' Stmt."), ¶ 45, D.I. 54; Plan § 5.01(b), PageID# 1193. Herndon's benefit was finally calculated to be $100.14 per month based on a recalculation dated January 22, 2014. Defs' Stmt. ¶ 46.

In the parlance of pension benefits, a "conversion factor" is used to convert an SLA to an optional form of benefit, such as the JSA payable to Herndon. Defs' Stmt. ¶ 4. The reasonableness of both the interest rate and mortality assumptions should be considered when evaluating the conversion factor. *Id.* ¶ 27.

Terry was asked to determine whether the "actuarial equivalence conversion factors" under the Plan and at issue here "fall within a range of reasonableness based on relevant, *current demographic and economic conditions*." Terry Decl. ¶ 15. (emphasis added); Deposition of

3

Thomas S. Terry ("Terry Dep.") at 35:22-36:2 (the "assignment was to use current demographics and current conditions to construct reasonable assumptions")[1]. Terry explained that by "current" he means the fourth quarter of 2019 when he performed the calculations in his report. Terry Dep. 57:16-57:18.[2] Terry explained that he used current assumptions because that was his assignment. Terry Dep. at 85:12-15. Accordingly, Terry was not asked and did not attempt to opine on either the assumptions or conversion factors that a reasonable actuary would have used to calculate Herndon's benefit in 2013.

### III. LAW & ARGUMENT

#### A. Legal Standard for Admissibility of Expert Opinions.

The standards for admissibility of expert opinion evidence are set forth in Federal Rule of Evidence 702 ("Rule 702"), which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue …

Rule 702. "The touchstones for admissibility under *Daubert* are two: reliability and *relevancy*." *United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) (emphasis added). In other words, an expert's testimony will not help the trier of fact if it is not relevant. Defendants bear the burden of establishing the admissibility of Terry's testimony by a preponderance of the evidence. *See*, *e.g.*, *Higginbotham v. KCS Int'l, Inc.*, 85 F. App'x 911, 915 (4th Cir. 2004). As the Court recognized in *Daubert*, Rule 702 plainly contemplates that the district court will serve as a "gatekeeper" to the

---

[1] The Terry Deposition transcript is submitted contemporaneously hereto as an exhibit to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.

[2] Terry concedes that whether the reasonableness of the factors should be measured at the time the factors were first adopted by a plan is a legal question on which he offers no opinion. *Id.* ¶ 16. By the same token, whether current assumptions or reasonable assumptions as of Herndon's retirement date should be used is a legal question.

admission of expert testimony. *See*, *e.g.*, *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 261 (4th Cir. 2005).

### B. Terry's Testimony About The Reasonableness Of Huntington's Conversion Factor Is Not Relevant.

A key issue in this case is whether the mortality and interest assumptions, and the resulting conversion factor, the multiplier that converted the SLA to a JSA, are reasonable. Huntington first calculated Herndon's JSA benefit in 2013 (and recalculated it in 2014 after it found an error). Defs' Stmt., ¶¶ 45-46.

As Terry opined, a JSA conversion factor is calculated as the ratio of two "present values." Terry Decl. ¶ 75. Present, obviously, means as of the date in question, in this case Herndon's Pension Commencement Date in 2013. Under ERISA, a participant has 90 days prior to the commencement of benefits to select a benefit. *See* 26 C.F.R. § 1.401(a) – 11(c)(1)(ii). During that 90-day election period, plan administrators must disclose specific information concerning plan benefits, including the present value of the benefits. *See* 26 C.F.R. § 1.401(a) – 11(c)(3). Accordingly, the present value of benefits must be calculated before the benefit commencement date. *See Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003) (present value is determined as of the date pension benefits commence); *see also Smith v. Rockwell Automation,* No. 19-C-0505, 2020 WL 620221, at * 7 (E.D. Wisc. Jan. 10, 2020) ("plans must use the kind of actuarial assumptions that a reasonable actuary would use at the time of the benefit determination"). Here, the present value of Plaintiff's benefits was calculated in 2013, as reflected in the notices sent to Plaintiff. Defs' Stmt., ¶¶ 45-46.

Terry's analysis is ***irrelevant*** to evaluating the conversion factor as of 2013 because in his "Terry Table," Terry based his actuarial assumptions on "conditions as of the fourth quarter of 2019." Terry Dep. at 57:6-18; Terry Decl. ¶ 16. Moreover, the "conditions" were based on

information that occurred after 2013.[3] Accordingly, the opinion is flawed in two respects. It is based on data that did not exist in 2013, and it measures conditions in 2019, not 2013.

To the extent that Terry contends his actuarial assumptions are reasonable for his assignment because he is determining the actuarial equivalence conversion factor as of the date of his calculation, Herndon agrees that a 2019 calculation should use reasonable assumptions as of 2019. But the issue here is whether Herndon's benefit was properly calculated using reasonable assumptions as of his Pension Commencement Date in 2013. No actuary in 2013 could possibly have known about mortality experience as of 2019 because that data was not available in 2013. Thus, it is *per se* unreasonable to derive a 2013 benefit calculation based on mortality assumptions that are informed by mortality experience *after* 2013. Moreover, conditions in 2019 are not conditions in 2013, which is the relevant measurement date. Since Terry based his opinion on facts that did not even exist in 2013, and his opinion was based on conditions in 2019, not 2013, it should be rejected.

  **C.**  **Terry's Alternative Calculation Is Also Irrelevant.**

As an alternative means of assessing the reasonableness of the conversion factor used to calculate Plaintiff's benefits, Terry did a calculation in which he purported to calculate benefits using several different interest rates and three different mortality tables: (1) the "Terry Table," discussed above, (2) the table Huntington submitted to the IRS for approval for use in funding calculations (the "IRS Table"), and (3) one of the tables Huntington used for financial accounting

---

[3] For example, in constructing his "Terry Table" for mortality assumptions, Terry used a reference table from the Society of Actuaries that was not available until October of 2014, modified by data from an experience study Ernst & Young conducted in 2016. Terry Report, ¶ 94 and App. B, p. 6; Terry Tr. at 173:6-16; Serota Rebuttal at ¶ 22. Similarly, Terry's 3.5 percent interest rate was based on the midpoint of the highest and lowest rates shown on several indices Terry selected during the period from 2012 to 2018. Terry Report at 152-53; Serota Rebuttal, at ¶ 48. Thus, Terry proposes to evaluate whether the conversion factor used to calculate Herndon's benefits in 2013 was reasonable based on data that did not even exist at the time.

6

under GAAP (the "GAAP Table). Terry Decl. ¶ 168. Terry's analysis based on these alternative tables suffers from the same flaw as the Terry Table, however, and is equally irrelevant to the issue before the Court. As Terry describes in his report, both the GAAP Table and the IRS Table were based on a mortality experience study conducted by Ernst & Young in 2017. Terry Decl. ¶¶ 172-175. And the Terry Table was derived from actuarial experience as of 2019. A reasonable actuary *could not* have used this data as the basis for actuarial assumptions in 2013, and thus they are irrelevant.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order excluding Terry's expert testimony on the reasonableness of Huntington's conversion factors from consideration in connection with Defendants' motion for summary judgment.

Dated: February 14, 2020                  Respectfully submitted,

*/s/ Gregory Y. Porter*
**BAILEY & GLASSER LLP**
Gregory Y. Porter (VSB # 40408)
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: gporter@baileyglasser.com

Mark G. Boyko (to be admitted *pro hac vice*)
**BAILEY & GLASSER LLP**
8012 Bonhomme Avenue, Suite 300
Clayton, MO 63105
Tel: (202) 463-2101
Fax:(202) 463-2103
mboyko@baileyglasser.com

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice*)
Mark P. Kindall (*pro hac vice*)
Douglas P. Needham (*pro hac vice*)
Oren Faircloth
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email: rizard@ikrlaw.com
Email: mkindall@ikrlaw.com
Email: dneedham@ikrlaw.com
Email: ofaircloth@ikrlaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2020, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Gregory Y. Porter*
Gregory Y. Porter