**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| Roger A. Herndon, on behalf of himself and all others similarly situated, | Civil Action No.: 4:19-cv-00052-HCM-DEM |
|       Plaintiff, | |
|  vs. | |
| Huntington Ingalls Industries, Inc., the HII Administrative Committee, and John/Jane Does 1–5, | CLASS ACTION |
|       Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

Page

I.  Introduction ..................................................................................................................... 1

II.  Factual Background .......................................................................................................... 2

III.  Procedural Background ..................................................................................................... 3

IV.  The Terms Of The Proposed Settlement ........................................................................... 5

   A.  The Class. ...................................................................................................................... 5

   B.  Increased Benefit Payments. ......................................................................................... 5

   C.  Plan Amendments. ......................................................................................................... 7

   D.  Release. .......................................................................................................................... 7

   E.  Identification of Class Members. ................................................................................... 7

   F.  Notice and Administration. ............................................................................................ 7

   G.  Attorneys' Fees and Expenses. ...................................................................................... 8

   H.  Case Contribution Award. ............................................................................................. 8

V.  Argument ......................................................................................................................... 9

   A.  Standard And Process for Approval ............................................................................... 9

   B.  The Proposed Settlement Should Be Preliminarily Approved ...................................... 10

     1.  The Class Representative and Proposed Class Counsel Have Adequately Represented the Class. ............................................................................................................ 10

     2.  The Proposed Settlement Was Negotiated at Arm's Length. ..................................... 12

     3.  The Relief Provided for The Class Is More Than Adequate. ..................................... 14

       a)  The Costs, Risks, and Delay of Trial and Appeal ................................................... 15

       b)  The Effectiveness of Distribution to The Settlement Class .................................... 17

       c)  The Terms of Any Proposed Award of Attorneys' Fees, Including Timing Of Payment .................................................................................................................. 18

     4.  The Settlement Treats Class Members Equitably Relative to Each Other. ................. 24

   C.  The Proposed Notice to Class Members Is Adequate ................................................... 25

VI.  Conclusion ...................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bekker v. Neuberger Berman Group 401(k) Inv. Com.*,
   504 F. Supp. 3d 265 (S.D.N.Y. 2020)........................................................................21

*Belknap v. Partners Healthcare Sys., Inc.*,
   No. 19-11437, 2020 WL 4506162 (D. Mass. Aug. 5, 2020) ..................................11

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
   No. 11-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014) ......................................24

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ..................................................................................24

*Berry v. Wells Fargo & Co.*,
   No. 17-304, 2020 WL 9311859 (D.S.C. July 29, 2020).........................................22

*Brown v. Tranurban USA, Inc.*,
   318 F.R.D. 560 (E.D. Va. 2016) .............................................................................19

*Cantu-Gurrero v. Lumbor Liquidators, Inc.*,
   952 F.3d 471 (4th Cir. 2020) ..................................................................................10

*Clark v. Duke Univ.*,
   No. 16-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019) .................................19

*Cruz v. Raytheon Co.*,
   No. 19-11425 (D. Mass. June 11, 2021) .............................................................19, 22

*Deem v. Ames True Temper, Inc.*,
   No. 10-01339, 2013 WL 2285972 (S.D. W.Va. May 23, 2013).............................12

*Duffy v. Anheuser-Busch Companies, LLC*,
   449 F. Supp. 3d 882 (E.D. Mo. 2020).....................................................................11

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010).....................................................................................9

*Figas v. Wells Fargo*,
   No. 08-4546 (D. Minn.) ...........................................................................................17

*Gordan v. Mass. Mutual Life Ins. Co.*,
   No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) ................................20

*Gould v. Alleco, Inc.*,
    883 F.2d 281 (4th Cir. 1989) ................................................9

*Grissom v. The Miss Corp.*,
    549 F.3d 313 (4th Cir. 2008) ..............................................19

*Harris v. Koenig*,
    271 F.R.D. 383 (D.D.C. 2010)...........................................22

*Hooker v. Sirius XM Radio, Inc.*,
    No. 13-3, 2017 WL 4484258 (E.D. Va. May 11, 2017) .......................20

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    No. 12-2548, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .................24

*In re Jiffy Lupe Securities Litig.*,
    927 F.2d 155 (4th Cir. 1991) ..........................................10, 12

*Kelly v. Johns Hopkins Univ.*,
    No. 16-2835, 2020 WL 434473 (D. Md. Jan. 28, 2020)...................19, 21

*Kemp-DeLisser v. St. Francis Hosp. & Medical Ctr.*,
    No. 15-1113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ...................22

*Krueger v. Ameriprise Fin., Inc.*,
    No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ..................23

*Kruger v. Novant Health, Inc.*,
    No. 14-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .................21

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) .........................................22

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
    No. 1:08-cv-1310, 2009 WL 3094955 (E.D. Va. 2009) ......................15

*In re Microstrategy, Inc.*,
    172 F. Supp. 2d 778 (E.D. Va. 2001) ....................................24

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ..............................9, 16, 21

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ..........................................9

*Nistra v. Reliance Tr. Co.*,
    No. 16-4773, 2018 WL 835341 (N.D. Ill. Feb. 13, 2018) ...................22

*In re Peanut Farmers Antitrust Litig.*,
    No. 19-463, 2021 WL 3174247 (E.D. Va. July 27, 2021)............................................. *passim*

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................26

*Prince v. Eaton Vance Corp*.,
    No. 18-12098 (D. Mass Sept. 24, 2019) ...............................................................17

*Richards-Donald v. Teachers Insurance and Annuity Ass'n of Amer.*,
    No. 15-8040 (S.D.N.Y.).........................................................................................17

*Robinson v. Carolina First Bank, N.A.*,
    No. 7:18-cv-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019)...............14, 20

*Sims v. BB&T Corp.*,
    No. 15-732, 2019 WL 1993519 (M.D.N.C. May 6, 2019) ....................................17

*Skochin v. Genworth Fin.*,
    No. 19-49, 2020 WL 6536140 (E.D. Va. Nov. 5, 2020)........................................19

*Smith v. Rockwell Automation, Inc.*,
    438 F. Supp. 3d 912 (E.D. Wis. 2020)..................................................................11

*Smith v. U.S. Bancorp*,
    No. 18-3405, 2019 WL 2644204 (D. Minn. June 27, 2019)..................................11

*Soloman v. American Web Loan, Inc.*,
    No. 17-145, 2020 WL 3490606 (E.D. Va. June 26, 2020) ....................................25

*Temp. Servs. Ind. v. Am. Int'l Group Inc.*,
    C/A No. 08-00271-JFA, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ....................12

*Torres v. Am. Airlines, Inc.*,
    416 F. Supp. 3d 640 (N.D. Tex. 2019) .................................................................11

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...............................................................................15

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ...............................................................................15

*Tussey v. ABB, Inc.*,
    No. 06-4305 (W.D. Mo. Aug. 16, 2019)..........................................................15, 16

*Urakhchin v. Allianz Asset Mgmt. of Amer., L.P.*,
    No. 15-1614, 2018 WL 8334858 (C.D. Cal. July 30, 2018)..................................17

*Velazquez v. Massachusetts Fin. Services Co.*,
  No. 17-11249 (D. Mass Dec. 5, 2019) ...................................................17

*In re Vitamins Antitrust Litig.*,
  305 F.Supp.2d 100 (D.D.C. 2004) .......................................................12

*In re Volkswagen & Audi Warranty Extension Litig.*,
  692 F.3d 4 (1st Cir. 2012) ..............................................................19, 20

*Wong v Arlo Technologies, Inc.*,
  No. 19-372, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................23

**Statutes**

29 U.S.C. § 1001, *et seq*......................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................4, 10, 12

Fed. R. Civ. P. 23(b)(1) .........................................................................4

Fed. R. Civ. P. 23(c)(2) ........................................................................26

Fed. R. Civ. P. 23(e) ......................................................................10, 17

Fed. R. Civ. P. 23(e)(1) .........................................................................9

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................9

Fed. R. Civ. P. 23(e)(1)(B)(i) ................................................................9

Fed. R. Civ. P. 23(e)(2) .....................................................................9, 10

Fed. R. Civ. P. 23(e)(2)(A) .............................................................10, 12

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................12

Fed. R. Civ. P. 23(e)(2)(C) ..................................................................17

Fed. R. Civ. P. 23(e)(2)(C)(i) ...............................................................15

Fed. R. Civ. P. 23(e)(2)(C)(iii) .............................................................18

Fed. R. Civ. P. 23(e)(3) .......................................................................10

Fed. R. Civ. P. 23(h) ............................................................................18

Fed. R. Civ. P. 26(f) ..............................................................................4

**Other Authorities**

Theodore Eisenberg, Geoffrey Miller and Roy Germano, *Attorneys' Fees in Class Actions, 2009-2013* ...............................................................................................20

Plaintiff Roger A. Herndon, individually and as Class Representative for a previously certified Class, moves for an order approving a class action settlement agreement between Plaintiff and Defendants (collectively "Huntington"), approving notice to the class, and setting a date for a fairness hearing.[1] Specifically, Plaintiff asks the Court to: (1) preliminarily approve the proposed Settlement; (2) approve the proposed form and method of notice to the Class; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

## I. Introduction

The proposed Settlement is an excellent result for the Class, with a present value of $2.8 million, or approximately 34% of classwide damages as calculated by Plaintiff's actuarial expert in the reports submitted as part of the summary judgment briefing in the case. The Settlement will increase the amount that Class Members are receiving in their monthly pension checks — a benefit that will continue for the rest of their lives and the lives of their beneficiaries.

The Employee Retirement Income Security Act of 1974 ("ERISA") requires that pension benefits in the form of a Joint and Survivor Annuity ("JSA"), which provides benefits for the life of the participant and beneficiary, or a Pre-Retirement Survivor Annuity ("PSA"), which provides survivor benefits to a retiree's beneficiary, be "actuarially equivalent" to the retiree's single-life annuity ("SLA"). This case is about whether the Huntington retirement plan at issue in this case (the "Covered Plan")[2] complied with those requirements. Plaintiff contends that Huntington shortchanged retirees and beneficiaries receiving JSAs and PSAs and that retiree and

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] The Covered Plan is the "Legacy" part of the Huntington Ingalls Industries, Inc. Newport News Operations Pension Plan for Employees Covered by United Steelworkers Local 8888 Collective Bargaining Agreement, who began receiving pension benefits in the form of a JSA during the Class Period.

beneficiary monthly pension checks should be higher.

The value of the proposed settlement must be considered in light of the substantial litigation risks in this cutting-edge and complex case. Plaintiff's legal theory has not been litigated through trial in any case to date, there are no appellate decisions directly on point, and only one other case involving the same claims has resulted in a class-wide settlement. Indeed, this is the only case of this kind where a court has ruled on a motion for summary judgment. Plaintiff's ability to prevail in this case hinges on which actuarial assumptions are used to measure retiree's benefits. Defendants vigorously disputed the actuarial assumptions selected by Plaintiff's expert through their own expert witness, who opined that Plaintiff's monthly benefits were entirely appropriate. Accordingly, success at trial would depend on Plaintiff winning a battle of experts in a highly technical field. For these reasons, and others discussed in more detail below, the Settlement satisfies the criteria for preliminary approval, and Plaintiff requests that the Court grant this motion.

## II. Factual Background

Plaintiff filed this proposed class action on May 20, 2019, on behalf of participants and beneficiaries receiving pension benefits in the form of a JSA or PSA from the Covered Plan. *See* Dkt. 1, generally. As Plaintiff alleged in the Complaint, ERISA requires that JSAs and PSAs be at least the "actuarially equivalent" of the SLA the participant could have taken when he or she began to receive benefits.[3] *Id*. at ¶¶ 21–28 (citing ERISA § 205(d) and (e), 29 U.S.C. § 1055(d) and (e)). Two benefit forms are "actuarially equivalent" when they have the same present value,

---

[3] The annuities that must be actuarially equivalent to the SLA are the plan's "Qualified Joint and Survivor Annuity" (the "QJSA"), Qualified Optional Survivor Annuities ("QOSAs") and Qualified Pre-Retirement Survivor Annuities ("QPSAs"). *See* ERISA §205(d) and (e), 29 U.S.C. § 1055(d) and (e).

calculated using the same, reasonable actuarial assumptions. Dkt. 1 at ¶¶ 29.

The actuarial assumptions used to calculate present values for determining actuarial equivalence involve mortality and interest rates. A mortality assumption estimates how many benefit payments will be made, based on the ages of the participant and (in the case of JSAs), the beneficiary. An interest rate assumption discounts the value of expected future payments to a present value. When payments under one benefit option are likely to extend longer than those under another, the benefit amount under the first option will be lower to account for the likelihood that more payments will be made. For example, the amount of a JSA benefit will be lower than the amount of an SLA benefit to account for the possibility that the beneficiary will receive benefits after the participant's death. But, the present values of those two forms of benefits must be the same to be actuarially equivalent.

Plaintiff alleged in the Complaint that Huntington calculated his JSA benefit (and the JSAs and PSAs of other Class Members) using outdated mortality and interest rate assumptions which caused his monthly benefit to be less than an "actuarially equivalent" amount. Dkt. 1, ¶¶ 65. In other words, the present values of Class Members' JSA and PSA benefits were less than the present values of the SLAs they could have taken instead; the present values of the two benefit types would have been equal had Defendants used mortality and interest rate assumptions that were reasonable as of the date Class Members began to receive their benefits.

### III. Procedural Background[4]

On May 20, 2019, Plaintiff filed the class action Complaint (Dkt. 1), and on June 27, 2019, Defendants moved to dismiss (Dkt. 10), which this Court denied on February 18, 2020, as

---

[4] Further details concerning the procedural history of the case are set out in paragraphs 3–19 of the attached Declaration of Douglas P. Needham ("Needham Decl.") filed in support of this motion for preliminary approval.

memorialized in a written decision on February 20, 2020 (Dkt. 73).

While Defendants' Motion to Dismiss was pending, the Court entered a scheduling order (the "Scheduling Order") pursuant to Fed. R. Civ. P. 26(f). Dkt. 27. Pursuant to the Scheduling Order, the Parties engaged in fact and expert discovery, including the production of internal HII documents, emails and data, the deposition of HII executives and of Plaintiff Roger Herndon, the exchange of expert reports and the deposition of the Parties' respective actuarial experts.

Plaintiff filed a Motion for Class Certification on December 13, 2019 (Dkt. 46). On January 17, 2020, the Parties filed a stipulation that the claims set forth in the Motion for Class Certification were appropriate for certification under Fed. R. Civ. P. 23. Dkt. 48. Accordingly, on February 25, 2020, the Court certified a Class under Rule 23(b)(1) defined as follows:

> All participants or beneficiaries of the "Legacy" part of the Huntington Ingalls Industries, Inc. Newport news Operations Pension Plan for Employees Covered by United Steelworkers Local 8888 Collective Bargaining Agreement, who began receiving pension benefits in the form of a joint and survivor annuity during the Class Period, which shall be defined as May 20, 2013 through January 17, 2020. Excluded from the Class are Defendants and any individuals who are subsequently determined to be fiduciaries of the Plan.

Dkt. 76, at 2.

After the completion of expert discovery, Defendants filed, *inter alia,* a motion for summary judgment and a *Daubert* motion directed at Plaintiff's expert (Dkt. 53 and 78), while Plaintiff filed, *inter alia,* a *Daubert* motion directed at Defendants' expert (Dkt. 61). All motions were thoroughly briefed and argued.

On August 28, 2020, Magistrate Judge Miller issued a Report and Recommendation on the pending motions, recommending that all three motions be denied. Dkt. 106. Defendants filed an objection to the Report and Recommendation on September 11, 2020 (Dkt. 108), which the Court overruled on September 29, 2020 (Dkt. 113). At a subsequent status conference on January

25, 2021, the Court set the case for a bench trial beginning on November 8, 2021. The Court also set a date for a Settlement Conference with a Magistrate Judge.

The Parties participated in a Settlement Conference with Magistrate Judge Miller on June 14, 2021, but were unable to reach a Settlement during that Conference. The Parties participated in a second Settlement Conference with Magistrate Judge Miller on September 8, 2021, during which the Parties reached an agreement in principle with respect to the amount of the Settlement and other key issues related to the structure of a Settlement Agreement. The Parties subsequently negotiated the details of the settlement, resulting in the execution of the final version of the Settlement Agreement on November 12, 2021.

## IV. The Terms Of The Proposed Settlement

The full Settlement Agreement is attached to the Needham Declaration as Exhibit A. The material terms of the Agreement are summarized below:

### A. The Class.

The Class is the non-opt out class previously certified by the Court. The Class definition is recited *supra* at page 7.

### B. Increased Benefit Payments.

The Settlement provides that the Plan will be amended, and the monthly benefit of each participant who began receiving a benefit in the form of a JSA, and the monthly benefit of each beneficiary who began receiving the survivor benefits of a PSA, will be increased. The amount of the increase will be calculated to allocate the present value of the Net Settlement Amount (the total amount of the Settlement, less amounts approved by the court for payment of fees, expenses and the client contribution award) to Class Member and/or their Associated Beneficiaries in

proportion to the total value of their past and future pension benefit payments.[5] The benefit increase for each Class Member and/or beneficiary will be based on the following steps:

(1) calculate the total amount of benefits paid to each Class Member and/or his or her Associated Participant, including interest at 4.5% annually from the date each benefit was paid, from the beginning of the Class Period until January 1, 2022 (the "Past Benefit Amount");

(2) calculate the value of the Past Benefit Amount if paid as a monthly benefit in the same form (e.g., a 50 or 75 percent JSA) as the Class Member is currently receiving using the Annuitization Assumptions (the "Adjusted Past Benefit");

(3) The Monthly Benefit Increase is the Settlement Percentage multiplied by the sum of (a) the Adjusted Past Benefit and (b) the Currently Monthly Benefit. The Settlement Percentage is calculated by dividing the Net Settlement Amount by the sum of (i) the Past Benefit Amounts of all Deceased Class Members, (ii) the present value as of January 1, 2022 of the Adjusted Past Benefits for all Class Members and/or Associated Participants (other than Deceased Class Members), and (iii) the present value of all future benefit payments owed to Class Members (before the increase contemplated by this Agreement) as of January 1, 2022 (with (ii) and (iii) calculated using the Settlement Assumptions).[6]

---

[5] This allocation methodology is considerably simpler than one that is based on the specific damages which might be determined for each Class Member if Plaintiff prevailed at trial. The primary virtue of this method, from Plaintiff's perspective, is that expert expenses for calculating and verifying a plan of allocation specifically tied to the use of different actuarial assumptions are high relative to the present value of claims in this case. Thus, greater precision in the allocation of the Settlement could only be achieved by further reducing the total value of the Settlement that would be available for distribution to the Class.

[6] Settlement Agmt., Section III(B). Both the Adjustment Assumptions and the Settlement Assumptions are based on current interest rates, coupled with a custom mortality table approved for the Plan's use by the Internal Revenue Service in 2019.

**C. Plan Amendments.**

Effective upon final approval of the Settlement, the Plan shall be amended to provide for payment of benefit increases to Class Members. Settlement Agmt, Section III(A).

**D. Release.**

Upon entry of the Judgment by the Court, Plaintiff and each Settlement Class Member will be deemed to forever release and discharge Defendants and the Related Parties from any and all Claims arising on or before January 17, 2020 that were brought, or could have been brought, arising out of or relating to the allegations in the Complaint. For the avoidance of doubt, a Claim arises on or before January 17, 2020 if a Class Member's benefit amount is determined as of January 17, 2020 or earlier, even as to monthly payments made after January 17, 2020. "Released Claims" do not include claims by Class Members (other than Plaintiff) that are not related to the conversion of an SLA to a JSA or a PSA. Settlement Agmt., Section IV.

**E. Identification of Class Members.**

Class Members can be identified using the Plan's records. The Plan's records indicate that there are 1,994 Class Members. Needham Decl., ¶ 23.

**F. Notice and Administration.**

Defendants agree to pay for and provide notice to the Class and to governmental entities required under the Class Action Fairness Act ("CAFA"). Subject to Court approval of the settlement, the parties agree that Notice will be transmitted to Class Members in the manner selected by the Class Member for receipt of communications from the Plan, or by first class mail to the address that is maintained in Huntington's records. Settlement Agmt. Section II(B). The parties expect no unusual difficulties in locating Class Members for purposes of notice or distribution of the re-calculated benefits.

The proposed Class Notices (Settlement Agmt. Exs. 1 & 3) inform Class Members about the nature of the Action, the terms of the Settlement and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, key court documents, including the Complaint, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, Plaintiffs' Motion for Final Approval, and pertinent Court Orders will be posted on a Settlement Website. For notices that are returned as undeliverable, Defendants will engage in commercially reasonable means to find a current address and re-send the Notice.

### G.  Attorneys' Fees and Expenses.

The Settlement Agreement provides that proposed Class Counsel Izard, Kindall & Raabe, LLP ("IKR") and Bailey & Glasser LLP ("B&G") will request that this Court award attorneys' fees of up to 25% of the present value of the Settlement, plus expert and other litigation expenses and costs subject to Court approval. Settlement Agmt. Section II(F). The Parties estimate that the present value of the Settlement is $2.8 million. The Settlement expressly provides that the Settlement is not conditioned upon the Court approving the requested amounts for fees, expenses or the Case Contribution Award. *Id.,* Section II(F)(2). Furthermore, the Settlement Agreement does not contain a "clear sailing" provision; Defendants are entitled to object to the request for attorneys' fees, costs and expenses. Settlement Agmt., Section V(B).

### H.  Case Contribution Award.

The Settlement Agreement provides that proposed Class Counsel intends to request that this Court award a case contribution award to Mr. Cruz of up to $10,000, subject to Court approval. Settlement Agmt., Section II(E). That amount will reduce the present value of the Settlement amount to be paid to Class Members in the form of annuity payments. *Id.*

## V. Argument

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001); *see also Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) (noting "the unassailable premise that settlements are to be encouraged"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing that there is a "strong presumption in favor of voluntary settlement agreements" and that the "presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation" (internal quotation marks omitted)).

### A. Standard And Process for Approval

The required approval of a class action settlement is left within the "sound discretion of the Court." *In re Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 252 (E.D. Va. 2009). Under Rule 23(e)(1)(B), a court should grant preliminary approval and order notification to the class if it determines that it "will likely be able to" approve the settlement. Fed. R. Civ. P. 23(e)(1). Determining whether the court will "likely" be able to approve the Settlement requires a preliminary consideration of the final approval factors set out in Rule 23(e)(2) to help assess whether the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(1)(B)(i) and 23(e)(2).

After its 2018 amendment, Rule 23(e)(2) now provides that a court may approve a proposed Settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether": "(A) the class representatives and class counsel have adequately

represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P.

23(e)(2). Rule 23(e)'s amendment was designed to "focus[]" the parties "on the primary

procedural considerations and substantive qualities that should always matter to the decision

whether to approve the [settlement]." Committee Notes on 2018 Amendment.[7]

### B. The Proposed Settlement Should Be Preliminarily Approved

Consideration of all relevant factors demonstrates that the Settlement is likely to be finally

approved under Rule 23(e)(2) and should therefore be preliminarily approved.

### 1. The Class Representative and Proposed Class Counsel Have Adequately Represented the Class.

The adequacy determination under Rule 23(e)(2)(A) looks to whether the interests of the

---

[7] The amended requirements of Rule 23 closely align with prior Fourth Circuit guidance that the Court should, when evaluating the adequacy of a class settlement, consider: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). Indeed, the Fourth Circuit has acknowledged that its factors "almost completely overlap with the New Rule 23(e)(2) factors" and that outcomes will be "the same under both". *Cantu-Gurrero v. Lumbor Liquidators, Inc.*, 952 F.3d 471, n.8 (4th Cir. 2020). Accordingly, it is appropriate for the district court to consider examine proposed settlements based on Rule 23(e)(2)'s factors. *See, In re Peanut Farmers Antitrust Litig.*, No. 19-463, 2021 WL 3174247 at *2 (E.D. Va. July 27, 2021).

class representatives do not conflict with the interests of any of the class members and that Plaintiffs' counsel are qualified and experienced and provided vigorous representation during the course of the case. *See,* Dkt. 47 at 12–21; *In re Peanut Farmers*, 2021 WL 3174247 at *3. Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *In re Peanut Farmers*, 2021 WL 3174247 at *3.

Mr. Herndon has been an exemplary representative. He has spent significant time on behalf of the class in this hard-fought litigation, gathering his relevant documents and providing them to counsel, responding to counsel's requests, reviewing documents, sitting for a deposition and participating in settlement negotiations. See Needham Decl., ¶ 49; *see also* Declaration of Roger Herndon ("Herndon Decl."), attached to the Needham Declaration as Exhibit C. His claims are the same as the claims of all Class Members, and the relief that he is seeking is calculated using exactly the same formula as that used for all Class Members.

In addition, proposed Class Counsel are well-qualified and have vigorously prosecuted this class action. B&G and IKR are active class action practitioners whose long experience in ERISA and class action litigation is demonstrated by the declarations attached to this memorandum. Declaration of Gregory Y. Porter ("Porter Decl."), ¶¶ 15 and Exh. A; Needham Decl., ¶ 29 and Exh. B. In addition, Class Counsel are pioneers in bringing this and other contemporaneous litigation challenging actuarial equivalence.[8] Needham Decl. at ¶ 29. As this Court determined in

---

[8] *See, e.g., Belknap v. Partners Healthcare Sys., Inc.,* No. 19-11437, 2020 WL 4506162 (D. Mass. Aug. 5, 2020) (motion to dismiss); *Smith v. Rockwell Automation, Inc.,* 438 F. Supp. 3d 912 (E.D. Wis. 2020) (same); *Duffy v. Anheuser-Busch Companies, LLC,* 449 F. Supp. 3d 882 (E.D. Mo. 2020) (same); *Smith v. U.S. Bancorp,* No. 18-3405, 2019 WL 2644204, at *1 (D. Minn. June 27, 2019) (same); *Torres v. Am. Airlines, Inc.,* 416 F. Supp. 3d 640 (N.D. Tex. 2019) (same).

certifying the class, the "adequacy of representation" factor of Rule 23(e)(2)(A) is met.

### 2. The Proposed Settlement Was Negotiated at Arm's Length.

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 104 (D.D.C. 2004), quoting Manual for Complex Litigation (Third), §30.42 at 238 (1995); *In re Peanut Farmers,* 2021 WL 3174247, *2 ("There is a strong initial presumption that the compromise is fair and reasonable."). Courts look first at whether the parties "have engaged 'in sufficient investigation of the facts to enable the court to intelligibly make an appraisal' of the fairness of a proposed class settlement." *Deem v. Ames True Temper, Inc.,* No. 10-01339, 2013 WL 2285972, at *2 (S.D. W.Va. May 23, 2013) (citation omitted).

Courts consider the extent of discovery conducted to ensure that a plaintiff had access to sufficient material to evaluate the case on an informed basis and to assess the adequacy of the settlement in light of its strengths and weaknesses. *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). Courts also consider the settlement process itself, "the involvement of a neutral or court-affiliated mediator or facilitator in [] negotiations may bear on whether they were conducted in a manner that would protect and further the class interest." Notes on 2007 Amendment to Rule 23; *see also Temp. Servs. Ind. v. Am. Int'l Group Inc.*, C/A No. 08-00271-JFA, 2012 WL 4061537, at *12 (D.S.C. Sept. 14, 2012) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached").

Here, the case was thoroughly litigated before the parties engaged in settlement discussions; all that remained was trial. The parties completed extensive fact and expert discovery. Defendants produced over 170,000 pages of documents, including actuarial valuation reports

about the Plan, internal memoranda regarding how Huntington selected the actuarial assumptions used to value its pension liabilities and the core mortality tables and economic data upon which these valuations were based. Needham Decl., ¶ 8. Plaintiff deposed HII's Vice President of Compensation and Benefits, its Director of Employee Benefits and its Executive Vice President and Chief Human Resources Officer, while Defendants deposed Mr. Herndon. *Id.* at ¶ 9. The Parties also engaged in substantial expert discovery. Plaintiff proffered the testimony of an actuarial expert, Dr. Mitchell Serota, who opined that the actuarial assumptions used by the Covered Plan did not result in JSAs that were actuarially equivalent to the SLA Class Members could have selected at retirement. Plaintiff's expert opined that, in order to provide an actuarially equivalent benefit, the Covered Plan should have used actuarial assumptions that were reasonable as of Class Members' Annuity Start Dates. Plaintiff's expert also opined on actuarial assumptions that would have been reasonable for each year during the Class Period and reviewed and responded to a report provided by Defendant's expert. Needham Decl., ¶10; *see also* Dkt. Nos. 79-1, 79-2 and 79-3.

At the end of this discovery, the Parties each challenged the admissibility of the other side's expert opinions and Defendants moved for summary judgment (Dkt. Nos. 53, 61 and 78). The motions were thoroughly briefed and argued, and Magistrate Judge Miller issued a Report and Recommendation on all of the pending motions on August 28, 2020, recommending that they all be denied. *See* Dkt. No. 106. Defendants objected to the Report and Recommendations (Dkt. No. 108), but the Court overruled the objections on September 29, 2020 (Dkt. No. 113).

As a result of their thorough initial investigation, their review of Defendants' documents and depositions of Defendants' key witnesses, their work with their own expert and deposition of Defendants' expert, their briefing of the motions to dismiss, for class certification, to disqualify

experts and summary judgment, as well as their review of this Court's rulings on the motions discussed above, Class Counsel had ample information to understand the strengths and weakness of the case prior to engaging in settlement discussions.

The settlement process itself took place over several months and was mediated by Magistrate Judge Miller, who was intimately familiar with the claims, the defenses, and the work of the Parties' respective witnesses. Plaintiff sent Defendants a detailed settlement proposal and demand letter in March of 2021 and the Parties engaged in further settlement correspondence before the settlement conference with Judge Miller on June 14, 2021. Needham Decl. ¶ 16. The Parties were unable to reach an agreement at the June 14 settlement conference, and continued to prepare for trial. *Id.* Following a status conference with Judge Miller on August 16, 2021, the Parties agreed to a second mediation session on September 8, 2021. *Id.* at ¶ 18. At this session, the parties reached an agreement in principle on the key terms of the Settlement. *Id.* In the weeks that followed, they negotiated the details and finalized the Settlement Agreement. *Id.* at ¶ 19.

The extent of this litigation, the hard-fought negotiations between experienced attorneys for both sides, the use of a neutral mediator, and the excellent result for the Settlement Class are all testaments to the non-collusive nature of the settlement. *See, e.g., In re Peanut Farmers*, 2021 WL 3174247, at *3 (citing the completion of discovery and the use of a neutral mediator as sufficient evidence to support a finding that the settlement was negotiated at arm's length).

### 3. The Relief Provided for The Class Is More Than Adequate.

To approve a settlement, a court must determine that the "settlement is fundamentally fair, adequate, and reasonable." *Robinson v. Carolina First Bank, N.A.,* No. 7:18-cv-02927-JDA, 2019 WL 719031, at *7 (D.S.C. Feb. 14, 2019) (citing *United States v. North Carolina,* 180 F.3d 574, 581 (4th Cir. 1999)). An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount of the

settlement. In balancing, however, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a final judgment. *Lomascolo v. Parsons Brinckerhoff, Inc.,* No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. 2009) (citing *Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977)). As discussed below, the proposed Settlement provides meaningful, immediate and continuing benefits to the Settlement Class, while avoiding potentially years more of costs and delays, and the risks inherent in all class action litigation if the case were to go to trial.

### a) The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the court to consider the adequacy of class relief in light of the costs, risks, and delay of trial and appeal. "[I]nherent in all litigation is risk which certainly impacts [the] settlement total." *In re Peanut Farmers*, 2021 WL 3174247, at *3.

The risk of delay in this case is high. Although the case was already scheduled to begin trial, because no appellate court has, to date, directly considered Plaintiff's legal theory, the party that lost at trial would almost certainly take an appeal.

While delay is a risk in all litigation, it is a particularly serious risk in a case that involves retirees in their 60s and 70s. ERISA class actions over novel theories of liability like this one tend to have significant life-cycles even after trial. For example, in *Tussey v. ABB, Inc.*, the first ERISA fiduciary breach class action trial was conducted in January, 2010. *See, Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014). The participants received a trial verdict in 2012, saw that verdict reduced by the court of appeals in 2014 and eventually settled in 2019 — a decade after trial. *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (remanding on damages); *Tussey v. ABB, Inc.*, No. 06-4305, Dkt. 869 (W.D. Mo. Aug. 16, 2019) (granting final approval of settlement). Such delays significantly harm class members already in retirement. In contrast, if this Settlement is approved, the Class will begin receiving higher monthly pension payments now,

instead of years later if the case were ultimately successful after trial.

The litigation risks in the case are also high. Plaintiff and Huntington have vastly different views about Huntington's potential liability and the likely outcome of the litigation. Plaintiff's core allegations regarding actuarial equivalence survived a motion to dismiss and a motion for summary judgment but are entirely untested on the merits.

The key question — whether the benefits provided to Class Members during the Class period were less than the actuarial equivalent of the SLAs that they could have selected — is one that can only be determined at trial through expert testimony. Plaintiff and Huntington each retained actuarial experts that provided radically different opinions on this issue. *See* Dkt. 54-2, 54-3, 54-4, 55-12, 65-1, and 85-1. Plaintiff is confident in his expert's opinion and believed that the opinion of Defendants' expert, Thomas Terry, was sufficiently lacking in credibility to move to exclude it (Dkt. 61). Notably, however, while the Magistrate Judge's Report and Recommendations found that both experts' opinions were sufficiently credible as to be admissible (Dkt. 106, at 8-26), the Magistrate Judge indicated that he might be persuaded by the arguments of Huntington's actuary if he were sitting as the finder of fact. *Id.* at 34.

The Court's rulings on the *Daubert* motions and the summary judgment motion set up a "battle of experts" for trial. The results of such battles are notoriously difficult to predict. *See In re MicroStrategy*, 148 F. Supp. 2d at 667. And, even if the Court credited *parts* of Terry's testimony, it could reduce or eliminate altogether the damages that could be awarded.

A Settlement that provides 34 percent of the damages that Plaintiff's expert calculated in his litigation report is an outstanding result in light of the likelihood of further lengthy, expensive litigation and the risk that the Class would recover less — or possibly nothing at all. ERISA class settlements involving statutory claims that have been litigated much more frequently (and, thus,

have more of a track-record) often settle for lower percentages of plaintiffs' asserted damages. *See, e.g., Velazquez v. Massachusetts Fin. Services Co*., No. 17-11249, Dkt. 108 (D. Mass Dec. 5, 2019) (approving settlement for 29% of maximum damages); *Prince v. Eaton Vance Corp*., No. 18-12098, Dkt. 57 (D. Mass Sept. 24, 2019) (approving settlement for 23% of total damages); *Richards-Donald v. Teachers Insurance and Annuity Ass'n of Amer*., No. 15-8040 (S.D.N.Y.) ($5 million settlement representing 11.6% of alleged damages); *Figas v. Wells Fargo*, No. 08-4546 (D. Minn.) ($17.5 million settlement representing 19.5% of alleged damages); *Sims v. BB&T Corp*., No. 15-732, 2019 WL 1993519, *2 (M.D.N.C. May 6, 2019) ($24 million settlement representing 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt. of Amer., L.P*., No. 15-1614, 2018 WL 8334858, *4 (C.D. Cal. July 30, 2018) ($12 million settlement representing 17.7% of maximum alleged damages).

Ultimately, if approved by the Court, Class Members will receive a significant percentage of the total possible recovery as calculated by Plaintiff's expert without the burden and risks of further litigation. This "adequate relief" factor of Rule 23(e)(2)(C) weighs in favor of preliminary approval.

b) **The Effectiveness of Distribution to The Settlement Class**

The Advisory Committee's Notes to the 2018 amendments to Rule 23(e) indicate that "[m]easuring the proposed relief may require evaluation of any proposed claims process. . . ." Here, no such process is needed.[9] The Settlement Agreement will, if approved, increase Class Members' future monthly benefit payments without the need for Class Members to file claims or

---

[9] The one exception is where both the Plan Participant Class Member and his or her Associated Beneficiary have both passed away before increase benefits under the Settlement are set to commence. The Settlement provides that Defendants will send notice of the Settlement to the last known address of the person who was receiving benefits, and a payout will be made to the estate or heirs upon receipt of an Estate Claim Form.

have those claims reviewed by a Claims Administrator. Moreover, many people have their benefit checks deposited directly, and those who do not have a strong incentive to ensure that the Covered Plan has their current address information, so that they can receive and promptly cash their benefits checks. Thus, the increase in monthly benefits will result in the efficient and effective distribution of the Settlement's benefits.

The Settlement is non-reversionary. The increased monthly benefit payments will be made automatically and fully over the course of the Class Members' lives, ensuring that none of the settlement will be returned to Huntington.

Finally, Class Members are receiving a distribution in the same form in which they were harmed: a reduction in benefits is being remedied by an increase in benefits. Accordingly, the method of distribution matches the claims alleged.[10] Each Class Member's recovery will be based on the same percentage of the total value of their past and future benefits. Pro rata distributions to the Class are typical and appropriate. *In re Peanut Farmers*, 2021 WL 3174247, at *4.

### c) The Terms of Any Proposed Award of Attorneys' Fees, Including Timing Of Payment

Rule 23(e)(2)(C)(iii) directs the Court to consider, as part of its evaluation of the fairness of the Settlement, provisions related to payment of attorneys' fees, including the timing of the payment. The Advisory Committee's Notes on the 2018 Amendment indicates that "[u]ltimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award."

---

[10] Moreover, Class Members will not be responsible for a large tax payment on a lump sum award.

Both the structure and the amount of this fee request are appropriate.

***Structure:*** The $2.8 million present value of the Settlement provides, for purposes of analysis, a "common fund." Under the Settlement, the amount that Defendants pay to Plaintiff for attorneys' fees, costs and expenses, as well as the Client Contribution Award, will be subtracted from the present value of the total class-wide Settlement, and each Class Member will receive a share of the value of the Settlement net of these payments. This is the appropriate methodology to use in a common fund case that involves payment of future benefits. *See, e.g., Cruz v. Raytheon Co.*, No. 19-11425 (D. Mass. June 11, 2021) (Final Order and Judgment) (awarding percentage of the present value of increased future benefit payments)*; Kelly v. Johns Hopkins Univ.,* No. 16-2835, 2020 WL 434473, at *6 (D. Md. Jan. 28, 2020) (awarding counsel a percentage of the total value of the settlement, including future tax deferral and fee savings that would benefit the Class); *Clark v. Duke Univ.,* No. 16-1044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019) (same).[11]

***Reasonableness of the Percentage:*** The Court has discretion to award attorneys' fees based on the "percentage of the fund" method or the lodestar method. *Brown v. Tranurban USA, Inc.*, 318 F.R.D. 560, 575 (E.D. Va. 2016); *Grissom v. The Miss Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). However, "both in the Fourth Circuit and across the country… the favored method of calculating attorneys' fees in common fund cases is the percentage of the fund method." *Skochin*

---

[11] This case is thus exactly the opposite of *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012), where the court declined to award fees using the common fund doctrine because the fees were not "'spread around' among the parties benefitted" by the settlement. Here, in contrast, there is "'reason for confidence that the costs [will] indeed be shifted with some exactitude to those benefiting.'" *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 264 n.39 (1975)). The way that the Settlement is allocated among Class Members ensures that the amounts awarded to counsel will reduce the present value of each Class Member's benefit by the same percentage.

*v. Genworth Financial*, No. 19-49, 2020 WL 6536140, *4 (E.D. Va. Nov. 5, 2020) (citing *Brown v. Transurban USA, Inc*., 318 F.R.D. 560, 575 (E.D. Va. 2016).

Plaintiff will request that the Court award 25 percent of the present value of the Settlement — $700,000 — plus costs, expenses and a case contribution award. To date, proposed Class Counsel have incurred over $290,000 in litigation expenses, primarily for expert expenses. Additional work remains to be done in connection with final approval and settlement administration.[12] While the Court will ultimately determine the amount of the Settlement to be awarded after Plaintiff has filed and thoroughly briefed the request for fees and expenses, nothing in the Settlement's provisions concerning attorneys' fees should lead the Court to question the reasonableness of the Settlement itself.

*First,* the percentage that Class Counsel intend to request is reasonable. "Under the percentage-of-the-fund method, courts base attorneys' fee awards on a percentage of the common recovery's value, usually between 25 percent and 30 percent." *Hooker v. Sirius XM Radio, Inc.*, No. 13-3, 2017 WL 4484258, *2 (E.D. Va. May 11, 2017). Empirical research confirms this. Analyzing 458 class action settlements between 2009 and 2013, Professors Eisenberg, Miller and Germano found that the median fee award was 29 percent. *See* Theodore Eisenberg, Geoffrey Miller and Roy Germano, *Attorneys' Fees in Class Actions, 2009-2013,* ("Eisenberg Study"), Law & Econ. Research Paper Series (Dec. 2016), at 11. Both the mean and median percentage awards for ERISA cases was 26 percent. *Id.* at 13.[13] Plaintiff's request of a

---

[12] "The prevailing view is that expenses are awarded in addition to the fee percentage." Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed. 2019). This follows from the "equitable principle that all reasonable expenses incurred in the creation of a fund for the benefit of a class are reimbursable proportionately by those who accept benefits from the fund …." *Id.*

[13] Approved fee awards for complex, innovative ERISA class actions are often higher. *See, e.g., Gordan v. Mass. Mutual Life Ins. Co.,* No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) (approving 33 1/3 percent attorneys' fee award in $30.9 million ERISA class action);

fee request equal to 25 percent is lower than these averages.

*Second,* this case is highly complex, both legally and factually. The case required detailed familiarity with not only the text of ERISA and the applicable regulations, but the ways in which the Retirement Equity Act modified and enhanced the statute's protections for actuarial equivalence. *See, e.g.,* Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Dkt. 64, at 5–7. Since the caselaw related to this area was undeveloped, Plaintiff could not simply rely on prior precedents to provide a roadmap for how to litigate this case. Finally, Counsel also had to understand and explain the actuarial science behind the statutory requirement of "actuarial equivalence," which involved lengthy and detailed work with actuaries who are experts in the field.

*Third,* this case had a high degree of litigation risk. As Defendants have pointed out, it centered on a novel legal theory. Dkt. 54 at 2 ("The Complaint advances a novel theory…"). When Plaintiff filed the case, in 2019, **no** cases had held that plans were required to update the actuarial assumptions used to calculate benefits once those assumptions ceased to be reasonable. *See Kelly*, 2020 WL 434473, * 3 (noting that "ERISA law is highly complex" and is a "rapidly evolving area of law" when approving class counsel's fee request) (citations omitted); *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at * 4 (M.D.N.C. Sept. 29, 2016) (approving fee request in ERISA class action given the "significant risk" due to "the novel nature of [the] case. . . .") Moreover, it was clear from the outset that if the case survived dispositive motions, it would turn into a battle of the experts in a highly arcane field, the outcome of which would be difficult to predict. *See In re MicroStrategy*, 148 F. Supp. 2d at 667.

---

*Bekker v. Neuberger Berman Group 401(k) Inv. Com.*, 504 F. Supp. 3d 265 (S.D.N.Y. 2020) (in an ERISA class action settlement, "Counsel's request for 28 percent of the common fund is reasonable and represents a discount compared to the norms in similar litigation").

*Fourth,* Proposed Class Counsel are highly experienced attorneys with substantial background in ERISA cases. IKR and B&G pioneered the legal theory at the heart of the case and have now jointly litigated many of the issues involved in ERISA's "actuarial equivalence" requirements. As demonstrated by their attached firm resumes (Needham Decl., Ex. B and Porter Decl. Ex. A), IKR and B&G are among the leading firms in the country that handle nationwide ERISA class actions. Together and separately, they have been appointed to represent plaintiffs in several significant ERISA class actions. *See, e.g., Cruz v. Raytheon*, No. 19-11425 (D. Mass.) (*see* Final Order and Judgment, Dkt. No. 112, ¶ 6, appointing B&G and IKR to represent the settlement class in an ERISA class action about pension plan's actuarial assumptions); *Nistra v. Reliance Tr. Co.,* No. 16-4773, 2018 WL 835341, at *5 (N.D. Ill. Feb. 13, 2018) (appointing B&G and IKR to represent plaintiffs in an ERISA class action about employee stock ownership plan); *Berry v. Wells Fargo & Co.*, No. 17-304, 2020 WL 9311859, at * 14 (D.S.C. July 29, 2020) (finding that IKR "displayed extraordinary skill and determination" when approving a $79 million settlement in an ERISA class action); *Leber v. Citigroup 401(k) Plan Inv. Comm.,* 323 F.R.D. 145, 166 (S.D.N.Y. 2017) (appointing B&G co-counsel for an ERISA class, noting that "counsel and their respective firms have significant prior experience litigating ERISA class actions"); *Kemp-DeLisser v. St. Francis Hosp. & Medical Ctr.*, No. 15-1113, 2016 WL 6542707, * 16 (D. Conn. Nov. 3, 2016) (describing IKR as a "national leader[] in class action litigation and ERISA matters"); *Harris v. Koenig,* 271 F.R.D. 383, 395 (D.D.C. 2010) (appointing B&G as co-counsel and noting its "extensive experience litigating ERISA class actions"). Moreover, proposed Class Counsel pioneered many of the issues involved in ERISA's "actuarial equivalence" requirements, and thus are uniquely qualified to represent the Class here. *See supra* ftn. 8 and cases cited therein.

Proposed Class Counsel's work on these cases allowed them to litigate this case through to settlement effectively and efficiently. Nonetheless, they have devoted a substantial amount of time to this case over two years. Class Counsel have spent over 2,500 hours litigating the case, including time spent researching the legal theory and working with the experts to draft the initial complaint, successfully responding to Defendants' motion to dismiss, engaging in discovery, reviewing relevant documents, working with experts on testimony, taking and defending fact and expert depositions, preparing and responding to *Daubert* motions and a motion for summary judgment, conducting settlement negotiations, and drafting this motion. Moreover, additional work needs to be done in connection with final approval and administration.

*Fifth,* when Courts award a percentage of the fee, they may perform a "lodestar crosscheck" to determine whether the proposed fee is reasonable. Here, proposed Class Counsel's lodestar in the case to date is equal to $1,600,804. *See* Needham Decl., at ¶ 41 and Porter Decl, at ¶ 10. Thus, the requested fee represents less than 44% of counsel's lodestar to date. A lodestar multiplier below 1 is below the range typically awarded by courts and is presumptively reasonable. *See, e.g., Wong v Arlo Technologies, Inc*., No. 19-372, 2021 WL 1531171, *11 (N.D. Cal. Apr. 19, 2021); *Krueger v. Ameriprise Financial, Inc*., No. 11-2781, 2015 WL 4246879, *2 (D. Minn. July 13, 2015) (noting the reasonableness of fee request that is below lodestar amount in novel ERISA litigation).[14] In the Eastern District of Virginia, courts have awarded multipliers

---

[14] The lodestar calculation is based on the contemporaneous time records of Izard, Kindall & Raabe, LLP ("IKR") and Bailey & Glasser, LLP ("B&G"). Needham Decl., at ¶ 40; Porter Decl., at ¶ 10. The hourly rates for each attorney are the same rates that have been approved in other ERISA class actions and are charged to the firms' hourly clients. Needham Decl., at ¶ 43; Porter Decl. at 10. Finally, proposed Class Counsel frequently work cooperatively with other firms that do complex, nationwide ERISA class action work (just as IKR and B&G are working together in this case). While each firm has its own rate structure, in proposed Class Counsel's experience, the hourly rates of firms that engage in this highly specialized nationwide practice are generally comparable. Needham Decl., at ¶ 44; Porter Decl., at ¶ 10.

of close to or greater than two. *See, e.g.*, *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 790 (E.D. Va. 2001) (approving a multiplier of 2.6); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 11-754, 2014 WL 4403524, at *15 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (approving a multiplier of 1.99).

*Sixth,* public policy considerations favor Plaintiff's fee request. As another court noted in a recent case involving settlement involving complex and novel ERISA claims,

> Public policy considerations weigh in favor of granting the requested fees. In awarding attorneys' fees in common fund cases . . . [courts] have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation. Attorneys' fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest. Fee awards should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature.

> This is especially true in ERISA class actions. . . . Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers and [t]he ERISA statute specifically encourages private enforcement.

*In re J.P. Morgan Stable Value Fund ERISA Litig.,* No. 12-2548, 2019 WL 4734396, at *3–4 (S.D.N.Y. Sept. 23, 2019) (internal quotations and citations omitted).

### 4. The Settlement Treats Class Members Equitably Relative to Each Other.

The Settlement treats Class Members equitably relative to each other.[15] The dollar amount of the benefit that Class Members will receive from the Settlement will vary based on the total

---

[15] Plaintiff will, in addition, request that the Court approve an additional amount for his services on behalf of the Class. Such a service award does not create a conflict or a situation where Plaintiff is treated more favorably than other members of the Class. Rather, modest service awards to a named plaintiff are simply "intended to compensate [the] class representatives for work done on behalf of the class, to make up for financial or reputations risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *In re Peanut Farmers,* No. 17-145, 2021 WL 3174247, at *4, citing *Galloway v. Williams*, No. 19-470, 2020 7482191, at *6 (E.D. Va. Dec. 18, 2020) and *Berry v. Schulman*, 807

present value of their past and future benefit payments. But, each Class Member will receive the same ***percentage*** of the present value of their benefits.

Although the Settlement only provides a ***prospective*** increase in benefits, it ensures that Class Members who retired at an older age and/or earlier in the Class Period (and thus are likely, from an actuarial perspective, to have fewer future benefits payments) are treated equitably by including the value of past benefit payments, plus interest, in the calculation for their future benefit increases, giving past payments the same weight in the calculation as the present value of future benefits.

### C.   The Proposed Notice to Class Members Is Adequate

Class Members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the Court. *See* Manual for Complex Litig. (Fourth), § 21.31. The Court should "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Soloman v. American Web Loan, Inc*., No. 17-145, 2020 WL 3490606, *6 (E.D. Va. June 26, 2020) (quoting Fed. R. Civ. P. 23(e)(1)(B)). Typically, this means "individual notice to all members who can be identified through reasonable effort." *Id*.

Here the proposed method of notification is adequate. The proposed Notice, attached as Exhibit 3 to the Settlement Agreement, is clear and straightforward, providing Class Members with enough information to evaluate whether to object to the Settlement, as well as directions to the Settlement Website which will include further information. Notice will be provided in the way each Class Member is accustomed to receiving communications about their pensions from Huntington, or first class mail where such election has not been made, and Class Members will not be required to submit a claim form or take any steps to receive the benefit of the

---

F.3d 600, 613 (4th Cir. 2015).

Settlement.[16] The Class Notice will also be posted to the Settlement Website. This proposed method of providing notice is adequate under Rule 23(c)(2). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) (holding that individual mailed notice which clearly describes the case and Class Members' rights meets due process requirements).

## VI. Conclusion

The proposed class action Settlement Agreement is fair, reasonable, and adequate. For the foregoing reasons, Plaintiff requests that this Court approve the Settlement Agreement on a preliminary basis so that Notice may be sent, schedule appropriate deadlines for various settlement requirements as reflected in the accompanying motion and schedule a hearing for final approval of the Settlement.

Dated: November 12, 2021      Respectfully submitted,

**Roger A. Herndon**

*/s/ Gregory Y. Porter*
**BAILEY & GLASSER LLP**
Gregory Y. Porter (VSB # 40408)
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: gporter@baileyglasser.com

Mark G. Boyko (*pro hac vice*)
**BAILEY & GLASSER LLP**
34 N. Gore Ave., Suite 102
Webster Groves, MO 63119
Tel: (314) 863-5446
Fax: (314) 863-5483
Email: mboyko@baileyglasser.com

---

[16] The only exception is for estates and heirs where both the Class Member Participant and his or her Associated Beneficiary passed away prior to the date when increased benefits commence. *See supra* n. 9.

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice*)
Mark P. Kindall (*pro hac vice*)
Douglas P. Needham (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email: rizard@ikrlaw.com
Email: mkindall@ikrlaw.com
Email: dneedham@ikrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of November 2021, I caused a copy of the foregoing to be electronically filed using the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Gregory Y. Porter*
Gregory Y. Porter (VA 40408)